Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 | **DATE** | 7/1/2002 |
| **CASE TITLE** | USA vs. Michael Segal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to suppress his statements is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 2 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 44 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 02 CR 112 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| MICHAEL SEGAL, | ) | |
| Defendant. | ) | |

**DOCKETED JUL 2 2002**

## MEMORANDUM OPINION AND ORDER

Defendant Michael Segal's instant motion to suppress raises fundamental Fifth and Sixth Amendment issues, as well as important questions relating to the investigatory techniques of the Government's law enforcement officials. In this case, however, the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit provide this Court with clear and ample direction. The relevant caselaw instructs us that the Government's law enforcement officials – while unquestionably acting in an aggressive manner – did not violate Defendant's constitutional rights as part of their investigation of public corruption matters in Chicago, Illinois.

On February 14, 2002, Defendant Michael Segal was charged in a one-count indictment with aiding and abetting insurance crimes affecting interstate commerce, in violation of 18 U.S.C. § 1033(a)(1) and (2). Presently before the Court is Defendant's motion to suppress statements made to law enforcement officials prior to his arrest on January 26, 2002. Defendant claims that those statements were made in violation of his Fifth and Sixth Amendment rights. At Defendant's request, the Court scheduled an evidentiary hearing on May 28, 2002 to address, among other issues, the instant motion. Defendant, however, decided not to proceed with the

44

hearing, but rather requested that the Court decide the motion on the written briefs already submitted to us. As Defendant has provided the Court only with a redacted copy of the FBI 302 Report on the January 26, 2002 incident – and no affidavit or other evidence or testimony – in support of his motion to suppress, the following facts are taken almost verbatim from File #194B-CG-116706-302. (*See* R. 21-1, Ex. 1, FBI 302 Rep. at 1.) For the reasons set forth below, Defendant's motion is denied. (R. 21-1.)

## RELEVANT FACTS

On January 26, 2002, at approximately 7:45 a.m., Special Agent ("SA") Patrick Murphy of the Federal Bureau of Investigations ("FBI") approached Defendant Michael Segal in the lobby of the Westin Hotel, located at 909 North Michigan Avenue in Chicago, Illinois. SA Murphy informed Defendant of his identity and requested an opportunity to speak with Defendant about a confidential matter. Defendant responded, "I'm not coming with you, I don't talk to the FBI, you can talk to my lawyer," or words to that effect. SA Murphy informed Defendant of his authority to arrest Defendant, and asked Defendant to accompany him to a designated area to hear what the Government had to say. Defendant followed SA Murphy to Room 900 of the Westin Hotel, where he was introduced to Assistant United States Attorney ("AUSA") Dean Polales.

AUSA Polales provided Defendant with some background information regarding the investigation against Defendant, and then explained the nature of the various charges that Defendant was potentially facing. Defendant was further informed that the Government was seeking Defendant's cooperation with regard to public corruption matters. At several points, Defendant began to respond, but SA Murphy interrupted and asked Defendant to wait until AUSA Polales finished what he had to say.

At approximately 8:10 a.m., Defendant stated that he wished to respond to what AUSA Polales and SA Murphy had said. AUSA Polales then advised Defendant of his *Miranda* rights, and SA Murphy informed Defendant that if he chose not to be fully cooperative, the FBI would execute search warrants at his condominium, house, office and storage space. Defendant was further informed that it was important that he be truthful if he intended to cooperate. Defendant indicated that he understood, and that he wished to respond to AUSA Polales and SA Murphy, but that he reserved the right to talk to his attorney with regard to certain issues. Defendant stated that he was well aware – being an attorney himself – that he probably should not say anything, but he wished to correct what he viewed as a mistaken understanding on the Government's part. Defendant then provided the statements at issue in this case.

Currently before the Court is Defendant Segal's motion to suppress the statements made to law enforcement officials on January 26, 2002. Defendant argues that his statements should be suppressed on the grounds that they were obtained in violation of Defendant's rights under the Fifth and Sixth Amendments to the Constitution of the United States. After careful consideration of the relevant caselaw as it relates to the unique facts of this case, we must deny Defendant's motion.

## ANALYSIS

### I. Legal Standards

A defendant who seeks to suppress evidence bears the ultimate burden of proof and persuasion of making a prima facie showing of illegality. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). Reliance on vague, conclusory allegations is insufficient. *See id.* Rather, a defendant must present "definite, specific, detailed, and nonconjectural" facts that justify relief before a district court will grant a suppression hearing. *United States v. Hamm*, 786

F.2d 804, 807 (7th Cir. 1986). *See also Unites States v. Felix-Felix*, 275 F.3d 627, 633 (7th Cir. 2001). Additionally, these facts must be material and they must be disputed. *United States v. Goudy*, 792 F.2d 664, 667 (7th Cir. 1986).

## II. Defendant Was Not In Custody

Defendant Segal claims that he was in custody when he was questioned by SA Murphy and AUSA Polales on January 26, 2002. Specifically, Defendant contends that the totality of the circumstances indicate that he was in custody when he was interrogated and that a reasonable person in his situation would not have believed that he was free to leave.[1] The Government, on the other hand, argues that Defendant's motion to suppress should be denied because Defendant has failed to bear his burden that he was in custody at the time that he made the statements he now seeks to suppress.

In determining whether Defendant was in custody under *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court must consider all of the circumstances surrounding the encounter between the law enforcement officials and Defendant, but "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. Cal.*, 511 U.S. 318, 322 (1994) (citations and internal quotation omitted); *United States v. James*, 113 F.3d 721, 727 (7th Cir. 1997). The Seventh Circuit has held that "[c]ustody implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion." *United States v. Martin*, 63 F.3d 1422, 1430 (7th Cir. 1995).

---

[1] In presenting his arguments to the Court, Defendant relies primarily on cases from the Ninth and Eleventh Circuit Court of Appeals and fails for the most part to cite to the numerous precedents from the controlling authority in this case, the Seventh Circuit Court of Appeals.

4

Furthermore, "the initial determination of custody depends on the objective circumstance of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323. In other words, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

In conducting the closely-related inquiry into whether a consent to a search is voluntary under the Fourth Amendment, the Seventh Circuit has considered the following factors: (1) whether the encounter occurred in a public place; (2) whether the individual consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individual was moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the individual of documents he needed to continue on his way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed. *United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999) (citing *United States v. Yusuff*, 96 F.3d 982, 985-86 (7th Cir. 1996)). *See also United States v. Pedroza*, No. 99 CR 192, 2000 WL 286890, at *7 (N.D. Ill. Mar. 10, 2000). Finally, we emphasize that the protections provided by *Miranda* attach only when an individual is both in custody and being interrogated. *See Ill. v. Perkins*, 496 U.S. 292, 297 (1990); *R.I. v. Innis*, 446 U.S. 291, 301-02 (1980); *Wyatt*, 179 F.3d at 537; *United States v. LaGrone*, 43 F.3d 332, 337 (7th Cir. 1994).

In this case, Defendant was not in custody at any time during his encounter with law enforcement officials. Defendant first met SA Murphy on the morning of January 26, 2002 in the well-lit and public lobby of the Westin Hotel. All of the relevant caselaw, including last

month's new Supreme Court case, indicates that these circumstances constitute a non-custodial setting. *See United States v. Drayton*, No. 01-631, 2002 WL 1305729, at *5 (U.S. June 17, 2002) (holding that law enforcement officials do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places – or, in this particular instance, on a bus – and by putting questions to them if they are willing to listen) (citations omitted); *Pedroza*, 2000 WL 286890, at *7 (finding that a consent to search was voluntary where an encounter occurred on a public curbside in broad daylight).

Next, Defendant agreed to speak with SA Murphy and to follow him to another area of the Westin Hotel. SA Murphy informed Defendant that he had the authority to arrest him but did not state that Defendant was under arrest and did not arrest him or physically force him to move. Significantly, the FBI 302 Report – which is undisputed by Defendant – does not state that Defendant would be arrested if he chose not to accompany SA Murphy. In fact, the request that Defendant speak with SA Murphy essentially informed Defendant that he was not under arrest and that he was free to decline to accompany SA Murphy. Defendant then chose the option of accompanying SA Murphy to Room 900 of the hotel. SA Murphy was alone, not in uniform, showed no display of force, never raised his voice, never displayed a weapon and did not restrain Defendant in any way. *See, e.g., Randle*, 966 F.2d at 1212 (finding that the defendant was not in custody where there were no allegations that the law enforcement officials used intimidation, force or threats of force, that they displayed weapons or that they physically restrained the defendant in any way whatsoever). Moreover, SA Murphy did not conduct a pat-down search of Defendant, nor did he prevent Defendant from carrying any personal items with him to the hotel room. *See, e.g., Wyatt*, 179 F.3d at 535.

Once in the hotel room, Defendant encountered only one other individual, AUSA Polales. Again, according to the FBI 302 Report, Defendant was not frisked, was not deprived of his personal items and was not treated in an aggressive manner. In the Court's view, Defendant was approached by law enforcement officials, candidly informed of the status of the investigation and the potential charges against him and given the opportunity to cooperate with the investigation. *See, e.g., James*, 113 F.3d at 726-28 (holding that a defendant who was interviewed by United States Postal Inspectors was not in custody and had voluntarily spoken to the investigators and that, therefore, his statements were not deemed a violation of *Miranda*). In fact, Defendant has failed to present any "definite, specific, detailed, and nonconjectural" facts regarding his encounter with law enforcement officials that would suggest anything other than that Defendant was not in custody under the seven-factor test set forth in *Yusuff*, 96 F.3d at 985-86, a burden he must meet to even be entitled to an evidentiary hearing, let alone suppression of his statements. *See, e.g., Hamm*, 786 F.2d at 807. *See also Wyatt*, 179 F.3d at 535 (holding that a defendant who voluntarily spoke with police officers outside of a bar and then voluntarily accompanied them to the police station to answer further questions was not in custody for purposes of *Miranda*).

Furthermore, although AUSA Polales was not required to provide Defendant with his *Miranda* rights at any time because Defendant was not in custody or being interrogated, *see Perkins*, 496 U.S. at 296-97, the AUSA gave Defendant the benefit of a reading of those rights prior to Defendant's making the statements he now seeks to suppress. According to the FBI 302 Report – the only evidence presented by Defendant to the Court – Defendant then acknowledged his understanding of those rights, acknowledged his superior knowledge of the legal issues by

informing the law enforcement officials that he was an attorney and then agreed to speak with SA Murphy and AUSA Polales without counsel being present. As a result, our view of the totality of the circumstances is that a reasonable person in Defendant's shoes would have understood that he was not under arrest, *see Berkemer*, 468 U.S. at 442, and that there was neither "a formal arrest," nor a "restraint on freedom of movement of the degree associated with a formal arrest," *see Stansbury*, 511 U.S. at 322, during the January 26, 2002 encounter between Defendant and law enforcement officials. Thus, given the undisputed facts in this case, the Court easily finds that Defendant was never in police custody on January 26, 2002.

### III. Defendant Did Not Invoke His Right To Counsel

After determining that Defendant Segal was not in custody at any time during his encounter with law enforcement officials on January 26, 2002, we further hold that neither Defendant's initial statement nor any other statements to law enforcement officials clearly invoked his right to counsel. Aside from the necessity of a custodial setting which -- as explained above in detail -- we did not find in this case, *see LaGrone*, 43 F.3d at 337-38, Defendant must also "*unambiguously* request the assistance of counsel in order to invoke his right to an attorney under *Miranda* and thus prevent the interrogator from asking any further questions." *United States v. Muhammad*, 120 F.3d 688, 698 (7th Cir. 1997) (emphasis added). *See also Davis v. United States*, 512 U.S. 452, 458-60 (1994).

To avoid difficulties of proof and to provide guidance to law enforcement officials conducting interrogations, the inquiry into whether an individual has actually invoked his right to counsel is an objective one. *See Davis*, 512 U.S. at 458-59. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an

expression of a desire for the assistance of an attorney." *McNeil v. Wis.*, 501 U.S. 171, 178 (1991); *Edwards v. Ariz.*, 451 U.S. 477, 484-85 (1981) (stating that an interrogation must cease once the suspect invokes his *Miranda* right to counsel). But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, controlling precedent does not require the cessation of questioning. *See Smith v. Ill.*, 469 U.S. 91, 97-98 (1984) (stating that "a statement either is such an assertion of the right to counsel or it is not"); *United States v. Walker*, 272 F.3d 407, 414 (7th Cir. 2001).

On the facts of this case, as gleaned by the Court from the FBI 302 Report, Defendant did not at any time unambiguously or unequivocally assert his right to counsel to law enforcement officials on the morning of January 26, 2002. The Supreme Court and the Seventh Circuit have held that statements similar to Defendant's statement to SA Murphy in the Westin Hotel lobby – "I'm not coming with you, I don't talk to the FBI, you can talk to my lawyer" – were not clear enough to alert a reasonable police officer that an individual was requesting an attorney, especially in light of Defendant's decision to continue the interaction with SA Murphy. *See Davis*, 512 U.S. at 461-62 (affirming the lower court's ruling that a defendant's statement, "Maybe I should talk to a lawyer," was not a request for counsel); *Walker*, 272 F.3d 413-14 (holding that a defendant's statement that "he wasn't sure whether he should talk to [an FBI agent] because he was afraid it would piss his lawyer off" was not an unambiguous and unequivocal request for a lawyer); *Muhammad*, 120 F.3d at 698 (stating that a defendant's cryptic reference to "an attorney" did not constitute an unambiguous request for counsel); *Lord v. Duckworth*, 29 F.3d 1216, 1220-21 (7th Cir. 1994) (ruling that the statement, "I can't afford a

9

lawyer but is there anyway I can get one," did not constitute an unambiguous request for counsel in the context of interrogation). *Compare Smith*, 469 U.S. at 93-99 (finding that a defendant's statement, "Uh, yeah. I'd like to do that [consult with a lawyer and to have a lawyer present]," constituted a request for counsel); *Smith v. Endell*, 860 F.2d 1528, 1529-33 (9th Cir. 1988) (concluding that a defendant's statement, "At this point, I think maybe you're looking at me as a suspect and I should talk to a lawyer," was to be given broad effect as an unambiguous request for counsel). Therefore, we conclude that the manifest weight of authority instructs us that – based on the uncontested facts contained in the FBI 302 Report – Defendant did not invoke his right to counsel at any time during his encounter with law enforcement officials in a clear manner which would be understood as an unambiguous invocation of such a right.

Finally, although Defendant claims that law enforcement officials violated his Sixth Amendment rights, we emphasize that the Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, *see United States v. Gouveia*, 467 U.S. 180, 188 (1984), and that before proceedings are initiated a suspect has no constitutional right to the assistance of counsel. *See Davis*, 512 U.S. at 456-57.

## IV. Waiver

Even assuming *arguendo* that Defendant Segal was both in custody and being interrogated by law enforcement officials in Room 900 of the Westin Hotel on January 26, 2002, and that he unambiguously invoked his right to counsel when he was approached by SA Murphy in the hotel lobby, we still find that Defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" when he made the statements that he now seeks to suppress. *See Miranda*, 384 U.S. at 475. The Supreme Court

has held that the question of whether an individual waived his rights "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *N.C. v. Butler*, 441 U.S. 369, 373 (1979). Thus, the determination as to whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *See Miranda*, 384 U.S. at 475-77; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (stating that the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused").

In the instant case, Defendant has failed to meet his burden of proof and persuasion – based on the totality of the circumstances – that he did not knowingly and voluntarily accompany SA Murphy to the hotel room and that he did not knowingly and voluntarily speak with him and AUSA Polales that morning. Once again we note that, because Defendant waived an evidentiary hearing and did not present any evidence in support of his motion to suppress other than the FBI 302 Report, the only facts that the Court may rely upon are contained in the FBI 302 Report. After reviewing this report, we conclude that – given Defendant's admission that he was a lawyer and his voluntary decision to "correct what he viewed as a mistaken understanding on the government's part" – it is difficult to see how Defendant could claim that his statements were anything but a voluntary renunciation of his right to have counsel present or to remain silent. (*See* R. 21-1, Ex. 1, FBI 302 Rep. at 1.) Rather, Defendant's decision can only be viewed as a very well-informed, if ultimately mistaken, tactical decision to advise the law

11

enforcement officials of the complexities of the situations being investigated, while gleaning from the dialogue the nature and extent of the areas of interest to the investigators. Therefore, we hold that – even if we were to find that Defendant was in custody and being interrogated, and that he had previously unambiguously or unequivocally invoked his right to counsel in the Westin Hotel lobby – Defendant knowingly waived that right when he provided his statements to law enforcement officials regarding public corruption matters in Chicago, Illinois. Consequently, we deny Defendant's motion to suppress the statements that he made to law enforcement officials on January 26, 2002.

## CONCLUSION

For all of the foregoing reasons, we deny Defendant Michael Segal's motion to suppress his statements. (R. 21-1.) There is no question that aggressive law enforcement methods were used on January 26, 2002, but these methods were neither unethical nor illegal. We conclude that – given our analysis of the totality of the circumstances surrounding the events of January 26, 2002 – Defendant was not in custody when he made his statements to law enforcement officials nor did he unambiguously or unequivocally invoke his right to counsel at any time during the encounter. Moreover, even if we were to find that Defendant was in custody and being interrogated in Room 900 of the Westin Hotel, and that he had unambiguously invoked his right to counsel in the hotel lobby, we find that Defendant knowingly waived that right when he later provided his statements to law enforcement officials.

Finally, we emphasize that Defendant's failure to offer an affidavit in support of his motion and his failure to proceed with the evidentiary hearing set for May 28, 2002, forced this Court to rely entirely on the FBI 302 Report, which did not in itself satisfy Defendant's burden

12

of production and persuasion. Therefore, Defendant's instant motion is denied, and the status hearing set for July 3, 2002 at 10:00 a.m. will be held to address all issues that will ensure a fair and efficient trial.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: July 1, 2002**