# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR ~~312~~ 112 | **DATE** | 2/27/2003 |
| **CASE TITLE** | USA vs. Michael Segal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss Counts Nine through Sixteen of the superseding indictment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 8 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 76 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 03 FEB 27 PM 4:50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 CR 0112 |
| | ) | |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| MICHAEL SEGAL, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED FEB 2 8 2003

## MEMORANDUM OPINION AND ORDER

The Government's superseding indictment charges Michael Segal with seven counts of mail fraud (Counts One through Seven), one count of wire fraud (Count Eight), a Racketeer Influenced and Corrupt Organizations Act ("RICO") count (Count Nine) as well as seven false statement counts (Counts Ten through Sixteen). Segal presently seeks dismissal of Counts Nine through Sixteen on the grounds that: (1) the RICO count fails to adequately allege a pattern of racketeering activity and an enterprise associated-in-fact; and (2) the false statement counts improperly mix the *mens rea* of 18 U.S.C. § 1033(a)(1) with *actus reus* of 18 U.S.C. § 2. For the reasons set forth herein, we deny Segal's motion to dismiss Counts Nine through Sixteen of the superseding indictment. (R. 58-1.)

## RELEVANT FACTS

The superseding indictment sets forth the allegations against Segal and is briefly summarized here. The Government alleges that Segal, President and Chief Operating Officer of Near North Insurance Brokerage, Inc. ("NNIB"), an insurance agency and brokerage firm, devised and participated in a scheme to defraud monies (allegedly over $20,000,000) from NNIB's trust account for a variety of improper uses. Segal allegedly carried out the scheme through an

76

enterprise including NNIB, its parent Near North National Group, Inc., as well as related affiliates and subsidiaries. Segal allegedly concealed the illegal activity by filing with the Illinois Department of Insurance a series of yearly applications that included false statements. Presently before the Court is Segal's motion to dismiss Counts Nine through Sixteen of the superseding indictment.

## LEGAL STANDARDS

To withstand a motion to dismiss brought pursuant to Federal Rule of Criminal Procedure 12, an indictment must include the essential elements of the crimes alleged therein. *United States v. Torres*, 191 F.3d 799, 804 (7th Cir. 1999) (noting that an indictment is generally sufficient "when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.") (quotations and citations omitted); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 860 (7th Cir. 1998). The indictment must also inform the defendant of the nature of the charges to enable him both to prepare a defense and to guard against double jeopardy. *Torres*, 191 F.3d at 804 (citations omitted). In construing the indictment, the Court infers facts necessarily implied and employs "common sense." *Palumbo Bros.*, 145 F.3d at 860 (internal quotations and citations omitted). Furthermore, we review the indictment as a whole and refrain from reading it in a "hypertechnical manner." *Torres*, 191 F.3d at 804 (internal quotations and citation omitted).

## ANALYSIS

### I. Count Nine (RICO)

Segal is charged under 18 U.S.C. § 1962(c), which requires that the Government allege that Segal engaged in "(1) conduct (2) of an enterprise (3) through a pattern of racketeering

2

activity." *Torres*, 191 F.3d at 805 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). At issue in the instant motion is whether the Government failed to adequately allege an enterprise and a pattern of racketeering activity.

**A. Enterprise associated-in-fact**

The Government alleges an enterprise associated-in-fact, defined by RICO as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court describes an enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Furthermore, an enterprise is "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Torres*, 191 F.3d at 805-06 (internal quotations and citations omitted). In addition, the enterprise must have a structure and goals separate from the predicate acts themselves; it must be "more than a group of people who get together to commit a pattern of racketeering activity." *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (internal quotations and citations omitted) (dismissing the complaint for failure to plead an enterprise because it did not "offer the slightest sign of a command structure separate and distinct" from the defendant corporation). The structure requirement, however, is not so onerous; "[t]here must be some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much." *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994) (internal quotations and citations omitted). *See also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) (concluding that an "enterprise" connotes more than a conspiracy but acknowledging "[j]ust how much more is uncertain.").

Guided by this Seventh Circuit case law, we conclude that the Government adequately pleads an enterprise associated-in-fact with the amount of specificity required under Federal Rule of Criminal Procedure 7. Fed. R. Crim. P. 7. *See Torres*, 191 F.3d at 804. The Government clearly identifies the entities included in the alleged enterprise: NNNG, NNIB and their related affiliates and subsidiaries (identified in Count One, paragraph 1(c) of the indictment), all of whom conducted insurance and insurance-related business throughout the United States and Europe. (R. 51, Superseding Indictment, Count Nine ¶ 1; Count One ¶ 1.) Tracking the language of a leading United States Supreme Court case, see *Turkette*, 452 U.S. at 583, the Government further alleges that the enterprise "constituted an ongoing organization whose members, associates, partners, employees and agents functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise." (R. 51, Superseding Indictment, Count Nine ¶ 1.)

Count Nine, however, goes beyond simply tracking the relevant language and provides sufficient detail, at this stage of the criminal proceedings, regarding: the purposes of the enterprise apart from the predicate acts themselves (¶2[1]), *see Stachon*, 229 F.3d at 675; the role of Segal as the principal leader, organizer and manager of the enterprise (¶ 3), *see Torres*, 191 F.3d at 805-06; and the means and methods of the enterprise (¶ 4), *id.* (R. 51, Superseding Indictment, Count Nine ¶¶ 2-4.) We acknowledge that the description of the specific roles of *some* entities alleged in the enterprise lacks detail, but as noted in one of the cases cited by Segal, this lack of specificity

---

[1] The indictment describes the purposes of the enterprise as: (1) "[e]nriching defendant MICHAEL SEGAL and the members, associates, partners, employees and agents of the enterprise through, among other things, mail fraud and wire fraud"; and (2) "[p]reserving and protecting the power, territory, and wealth of defendant MICHAEL SEGAL and the enterprise, and promoting and enhancing the size and strength of the enterprise." (R. 19, Superseding Indictment, Count Nine ¶ 2.)

4

might be addressed in a bill of particulars and does not necessitate dismissal of the indictment. *See United States v. Bailey*, 689 F. Supp. 1463, 1473 (N.D. Ill. 1987). Furthermore, Segal's reliance on *Richmond* is misplaced because the plaintiffs in that civil RICO case named a string of entities and did not provide *any* detail regarding the structure, continuity or common course of conduct of the alleged enterprise. *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 645-46 (7th Cir. 1995).[2] Altogether, the Court concludes the enterprise is plead with sufficient detail for Segal to understand the charges against him and prepare a defense; we will refrain from reading the indictment in a "hypertechnical manner." *Torres*, 191 F.3d at 804.

## B. Pattern of racketeering activity

RICO defines a "pattern of racketeering activity" as requiring at least two acts of racketeering committed in a ten-year period. 18 U.S.C. § 1961(1). The Supreme Court expanded upon this limited definition in the RICO statute with the continuity plus relationship test; the Government must show that the "racketeering predicates are related, *and* that they amount to or pose a threat of continuing criminal activity." *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492

---

[2] Further, the underlying district court decision in *Richmond* affirmed by the Seventh Circuit focuses specifically on the separateness requirement for pleading a RICO enterprise. *Richmond v. Nationwide Cassell L.P.*, 847 F. Supp. 88, 90-93 (N.D. Ill. 1994) (citing *Haroco v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 400-01 (7th Cir. 1984) (holding that the "person" charged with violating § 1962(c) must be distinct from the RICO "enterprise")). In their affirmance, the Seventh Circuit also expressed concern that any details in the complaint regarding structure were attributed to the "persons" and not the "enterprise." *Richmond*, 52 F.3d at 645-46. Therefore, because Segal fails to articulate clearly any argument that the indictment does not meet the separateness requirement, his heavy reliance on *Richmond* is misplaced. Furthermore, Segal fails to cite any *criminal* RICO cases from this circuit that dismiss an indictment for failure to adequately plead an enterprise. *See United States v. Marchese*, 1991 WL 60338, at *2 (S.D.N.Y. Apr. 11, 1991) (concluding that civil RICO cases cited by defendant were not only nonbinding authority from other circuits but also inapposite because they addressed motions to dismiss complaints rather than indictments).

U.S. 229, 239 (1989); *see also Sedima*, 473 U.S. at 496 n.14. (initially articulating the continuity plus relationship test).

The predicate acts satisfy the relationship test if they have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1047 (7th Cir. 1998) (quoting *H.J., Inc.*, 492 U.S. at 240). The continuity test is met if the acts demonstrate either closed-ended or open-ended continuity. *Id.* Closed-ended continuity may be shown by "a series of related predicates extending over a substantial period of time." *Id.* (quotations and citation omitted). The Court looks to five factors when determining whether closed-ended continuity exists: "the number and variety of predicate acts and the length of time over which they where committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* at 1049 (quotations and citation omitted). We examine these factors with an "eye toward achieving a natural and commonsense result." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) (internal quotations and citations omitted). Furthermore, "[n]either the presence or absence of any of these factors is dispositive." *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 524 (7th Cir. 1995). Open-ended continuity, in contrast, involves acts occurring over a short period of time with the threat of repetition in the future. *Corley*, 142 F.3d at 1049. Such a threat is present, for example, when "the predicates are a regular way of conducting [an] ongoing legitimate business." *Id.* (internal quotations and citations omitted).

We conclude that the predicate acts satisfy the relationship test, and Segal appears to concede this as he does not offer any serious argumentation on this prong. The acts all clearly

relate to Segal's alleged scheme to misuse and misappropriate trust monies while avoiding regulators. *Id.* at 1048. Segal, however, primarily argues that the predicate acts of mail and wire fraud do not satisfy the continuity test because they lack variety, occurred over a short period of time and are alleged to be part of a single scheme that had no victims and caused no injuries.

After a careful review of the applicable case law "with any eye toward achieving a natural and commonsense result," the Court concludes that Segal's arguments on continuity fail. *Vicom*, 20 F.3d at 780. First, although the mail and wire fraud acts are generally of the same type, the sixteen enumerated acts clearly are sufficient in quantity, weighing in favor of finding continuity. *Corley*, 142 F.3d at 1049 (considering "the number *and* variety of predicate acts" as factor determining continuity) (emphasis added). *Cf. Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 52 F. Supp. 2d 913, 919 (N.D. Ill. 1999) (concluding that only three acts, two of which were wire fraud, weighed against finding a pattern).[3] Second, the acts charged are alleged to have occurred during a seven-year period between 1995 and 2001—a time period sufficient to invoke RICO. *Cf. Vicom*, 20 F.3d at 780 (holding that nine-month period not sufficient to weigh in favor of finding closed-ended continuity); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (same); *J.D. Marshall Int'l v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (same over thirteen-month period).

---

[3] Segal is correct to point out that the Seventh Circuit "does not look favorably on many instances of mail and wire fraud to form a pattern." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990). In cases, however, where the Seventh Circuit has held that several acts of mail or wire fraud do not form a pattern, other factors of the continuity analysis were also lacking. *See e.g., Lipin Enters. Inc. v. Lee*, 803 F.2d 322 (7th Cir. 1986) (holding twelve acts designed to defraud only one victim on one occasion insufficient to allege pattern). The Government, in contrast, alleges that the acts here furthered a long-term scheme to misuse and misappropriate trust monies and abscond monies due clients in credits. This is far from the isolated episode of wrongdoing that falls beyond RICO's reach. *See Sedima*, 473 U.S. at 496 n.14.

Third, although the Government alleges a single scheme, that is sufficient, especially when it is of the magnitude of the scheme alleged in Count One. *See United States v. Stodola*, 953 F.2d 266, 270 (7th Cir. 1992) (the government need only show "multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity") (quoting *H.J., Inc.*, 492 U.S. at 237). Fourth, a commonsense reading of the indictment leads us to conclude that there were victims of the scheme (*e.g.* the trust, the beneficiaries of the trust, the clients whose credits were allegedly converted) that suffered harm. Therefore, we conclude that the Government adequately alleges continuity of the predicate acts such that dismissal of the indictment would be improper. *See Palumbo Bros.*, 145 F.3d at 878 ("[a]lthough continuity is an element of proof necessary *at trial* to conclusively establish [] [a] pattern of racketeering activity . . . it is not an essential element of a RICO offense that must be clearly and specifically established in the indictment.") (emphasis in text).

## II. Counts Ten Through Sixteen (False Statements)

Segal also seeks dismissal of the false statement counts (Counts Ten through Sixteen) for failure to allege the necessary elements of 18 U.S.C. § 1033(a) and 18 U.S.C. § 2(b). Counts Ten through Sixteen allege that between 1995 and 2001 Segal "knowingly and with intent to deceive caused to be made [] false, material statement[s] to the Illinois Department of Insurance . . . ." (R. 51, Superseding Indictment, Counts Ten through Sixteen.) Because § 1033(a) requires that a person "knowingly . . . make[]" a false statement, 18 U.S.C. § 1033(a), and § 2(b) requires that a person "willfully cause[] an act to be done ," 18 U.S.C. § 2(b), Segal alleges that the indictment mixes the *mens rea* of § 1033(a) ("knowingly") with the *actus reus* of § 2(b) ("causes an act to be done").

8

The Government, however, alleges that a fair reading of the indictment satisfies both § 1033(a) and § 2. First, the Government contends that the *mens rea* and *actus reus* of § 1033(a) are met if the language "caused to made" in the indictment is read to include statements actually made by Segal. Second, the Government argues that the reference to § 2 encompasses both subsections (a) and (b) and that the indictment is sufficient under either subsection.

After careful consideration, the Court concludes that the indictment adequately alleges violations of 18 U.S.C. § 1033(a)(1). First, the Government alleges that Segal "knowingly" caused a false statement to be made, satisfying the *mens rea* of § 1033(a)(1). Second, a reading of "caused to be made a false, material statement" and of the indictment as a whole satisfies the *actus reus* of § 1033(a)(1). Although "caused to be made" could possibly include statements made personally by Segal or statements that he caused others to make, a clearer drafting of the counts would have alleged that Segal "made and caused to be made false statements." Such language is actually alleged in Count One where the Government alleges that Segal "knowingly and with intent to deceive, made and caused NNIB to make false material statements to the IDOI for the purpose of influencing the actions of the IDOI . . . ." (R. 51, Superseding Indictment, Count One ¶ 5.) Therefore, reading the indictment as a whole and avoiding hypertechnicality, there is no question that the Government alleges that Segal himself made false statements, as required by § 1033(a)(1). As such, we hold that the Government adequately pleads violations of § 1033(a)(1).

The Court also concludes that the Government adequately pleads the elements of 18 U.S.C. § 2. Although Segal focuses on § 2(b)[4], the indictment does not specify whether the Government seeks liability under subsection (a) or (b). Thus, Segal's focus on the absence of the word "willfully" in the counts is not fatal.[5] In addition, again reading the indictment as a whole and refraining from hypertechnicality, the indictment pleads that Segal made and caused NNIB to make false statements "in order to conceal his improper use and withdrawal of PFTA funds and to continue his scheme from year to year unhampered by the requirements and of the law and the review of governmental and regulatory authorities, including law enforcement and the State of Illinois Department of Insurance . . . ." (R. 51, Superseding Indictment, Count One ¶ 5.) The indictment further alleges that Segal "knew and believed that NNIB's PFTA was not operated properly and according to the requirements of the law and the Code . . . ." (*Id.*) By implication, then, the Government pleads that Segal knew he was violating a legal duty, satisfying one definition of "willful."[6] *See Ratzlaf v. United States*, 510 U.S.135, 141-42 (1994).

---

[4] Section 2(b) states: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b).

[5] Indeed, the Seventh Circuit has upheld convictions for aiding and abetting under 18 U.S.C. § 2(a) when the defendant was charged with the substantive offense and not as an aider and abettor as long as no unfair surprise results from the § 2(a) conviction. *See United States v. Tucker*, 552 F.2d 202, 204 (7th Cir. 1977). Therefore, if the Government eventually proceeds on an aiding and abetting theory under § 2(a), it would not even have been necessary for the indictment to specifically charge a § 2(a) violation. *See United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994).

[6] That is not to say that the Government need prove that Segal knowingly violated a legal duty to satisfy § 2(b). We defer ruling on any definition of "willfully" until jury instructions are submitted. Without case support, the Government asserts that "willfully" has the same meaning as "knowingly" as used in § 2(b); the defendant disagrees. In *Ratzlaf*, the United States Supreme Court recognized that "[w]illful . . . is a word of many meanings and its construction is often . . .

Furthermore, we note that in denying motions to dismiss indictments or in affirming these denials, courts have held that § 2(b)'s "willfully" language need not be plead explicitly in the indictment. *See United States v. Krogstad*, 576 F.2d 22, 28-29 (3d Cir. 1978) (holding that "'[w]illfulness' need not be expressly stated in the indictment charging a violation of 18 U.S.C. s 2" where the indictment simply stated that the defendant caused a false audit report to be submitted and did not specify a charge under § 2(a) or §2(b)); *United States v. Grubb*, 469 F. Supp. 991, 996-97 (E.D. Pa. 1979) (discussing the difference between statutes that describe substantive crimes and § 2, which describes individuals that may be punished as principals, and reiterating *Krogstad's* holding that "willfulness" need not be plead in the indictment).

Therefore, we conclude that the indictment adequately pleads violations of both 18 U.S.C. § 1033(a)(1) and 18 U.S.C. § 2.

## CONCLUSION

For the reasons set forth herein, we deny Segal's motion to dismiss Counts Nine through Sixteen of the superseding indictment. (R. 58-1.)

ENTERED:

Judge Ruben Castillo
**United States District Court**

**Dated: February 27, 2003**

---

influenced by its context." *Ratzlaf v. United States*, 510 U.S.135, 141 (1994) (internal quotations and citations omitted). The Seventh Circuit also acknowledges the divergent definitions of "willful," cautions against a general instruction on "willfully" and encourages an instruction tailoring "willfully" to the details of the particular offense charged. *See Seventh Circuit Pattern Jury Instruction 4.09*. Thus, at this point in the proceedings, we will not rule on the definition of "willfully" applicable to § 2(b). Nevertheless, we hold that the allegations in the indictment support *Ratzlaf's* definition of "willfulness" and thus withstand dismissal.

11