# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 - all | **DATE** | 8/7/2003 |
| **CASE TITLE** | USA vs. Michael Segal, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. United States' motion to quash Michael Segal's trial subpoena served on Perkins Coie, LLC [108-1, 113-1] is granted. The Court quashes Segal's subpoena on Perkins Coie and instead orders the firm to produce the subpoenaed documents for an in camera inspection no later than August 27, 2003 for a determination as to whether their production to the defense is warranted. Defendant Segal's motion for an evidentiary hearing [97-1] is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | AUG 0 8 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | | 123 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | 03 AUG -7 PM 3:55 | | date mailed notice | |
| RO | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | No. 02 CR 0112 | **DOCKETED** |
| | ) | | |
| v. | ) | | AUG 0 8 2003 |
| | ) | Judge Ruben Castillo | |
| MICHAEL SEGAL, et al. | ) | | |

## MEMORANDUM OPINION AND ORDER

The Government presently moves to quash Michael Segal's ("Segal") subpoena served on Perkins Coie, LLC ("Perkins Coie"), the law firm that represents several potential government witnesses. In addition, Segal moves for an evidentiary hearing to discern whether potential government witness were acting as government agents and in violation of the Fourth Amendment when they received information hacked from the computer network of Near North Insurance Brokerage, Inc., ("NNIB"). For the reasons set out herein, the Court quashes the subpoena on Perkins Coie and instead orders the firm to produce the documents specified in the subpoena for *in camera* inspection for a final decision on whether they will be produced to Segal. (R. 108-1; 113-1.) The Court also denies Segal's motion for an evidentiary hearing *without prejudice* as premature and unsupported at this time. (R. 97-1.)

## RELEVANT FACTS

In the spring of 2002, NNIB discovered that a former employee from its information technology department, David Cheley ("Cheley"), had been hacking into the company's computer network between approximately the fall of 2001 and April 2002. Defense exhibits show that in October 2001, anonymous person(s), whom the defense asserts to be Cheley, transmitted hacked material, including allegedly privileged or confidential information, to two former NNIB

executives, Matt Walsh ("Walsh") and Dana Berry ("Berry"). Both Walsh and Berry, along with another former executive, Tim Gallagher ("Gallagher") have been cooperating with the Government's investigation and may testify for the Government at trial.

The record reveals that Cheley initiated contact with Walsh via email in late September 2001. In a September 21, 2001 email, Cheley introduced himself to Walsh as a former NNIB employee and wrote that he might have some information of interest to Walsh. (R. 98, Def.'s App., Ex. 5, Sept. 21, 2001 email.) That same day, Walsh answered Cheley's message by confirming his email address and sending Cheley his phone number. (*Id.*, Ex. 8, Sept. 21, 2001 email.) Cheley's email reply assured Walsh that he did not "want to do anything that might cause problems for either you or myself" and that "taking the high road is the best way to do things." (*Id.*, Ex. 15, Sept. 21, 2001 email.)

On October 1, 2001, Walsh received a zip file from a "Lisa Chen" that allegedly contained several dozen privileged and confidential communications involving Segal and NNIB.[1] The day after receiving the first zip file, Walsh emailed Chen the following message: "I recognize that these were sent in error and contain information that upon first glance I did not wish to receive and you did not intend to send. Hence it has been deleted without any review." (*Id.*, Ex. 17, Oct. 2, 2001 email.) Chen sent Walsh two other zip files of NNIB information during October 2001.

Segal points to the following four interactions between the government witnesses and the FBI as particularly telling of the Government's knowledge and role in obtaining the hacked

---

[1] Segal notes in his motion for an evidentiary hearing that Cheley used several aliases, including "Lisa Chen," "Lisa Fisher" and "Lisa Rasmussen" in his email correspondence with the government witnesses. What is not clear from the emails, however, is whether Walsh and the others immediately knew that these alias emails were in fact sent by Cheley.

2

material. First, on October 31, 2001, an FBI agent filled out a 302 report describing information received from a source who provided an attached copy of an email from Segal to NNIB employees regarding the company's internal audit. (*Id.*, Ex. 26, Oct. 31, 2001 302 Report.) Second, on February 8, 2002, Walsh sent an FBI agent an email with an attached "Lisa Rasmussen" email that contained a phone log of calls from NNIB employees to Walsh, Berry and Gallagher. Walsh indicated in his email to the agent that "[a]s noted in the past, from time to time I receive these anonymously. Again, I do not know if they are trying to intimidate us, set us up, or otherwise. If I receive any others I will advise." (*Id.*, Ex. 21, Feb. 8, 2002 email.) Segal notes that the Government has neither produced a copy of this email, nor a corresponding 302 report memorializing the forwarding of the hacked information. Third, on September 19, 2002, an FBI agent prepared a 302 report memorializing a March 2002 conversation with Berry, wherein Berry stated that he had received an unsolicited email from "Lisa Fisher." Again, Segal stresses the fact that the FBI agent did not contemporaneously memorialize its knowledge of the hacked information. Finally, three of the government witnesses brought these anonymous emails to the attention of an FBI agent in a January 14, 2002 conversation. The agent's notes of the conversation contain the name Dave "Chiele" or "Shiele" along with the statement: "sending anonym [sic] e-mails to these 3 (?)." (R. 112, Gov't's Mot. to Correct, Ex. A.) The agent recalls that one or more of the three witnesses expressed suspicion that Cheley might be sending them anonymous emails.[2]

---

[2] A second page of the agent's notes also state in the margin: "one e-mail sent by hacker" and in the center of the page: "told that he knew/heard NNIB was out of trust." (R. 112, Gov't's Mot. to Correct, Ex. A.) The agent has no present recollection of this second page of notes. (R. 112, Gov't's Mot. to Correct at 1.)

3

Whereas the potential government witnesses suspected that the anonymous emails were simply attempts to destroy their credibility, Segal contends that the information contained in the emails was solicited by the witnesses and passed onto the Government. (R. 97, Def.'s Mem. in Support of Mot. for Hr'g at 16.) Segal currently seeks an evidentiary hearing to ascertain how much hacked information was passed onto the Government, if the Government had any knowledge that it was hacked and if the witnesses were acting as government agents.

At the same time, Segal argues that the hacked information might have been used by the witnesses for improper business-related purposes. (R. 111, Def.'s Resp. to Mot. to Quash at 11.) To support this argument and rebut the Government's allegation that Segal's pending civil litigation against the witnesses is not simply retaliatory litigation, Segal seeks from Perkins Coie:

> All documents, including but not limited to any correspondence, memoranda, facsimile transmissions, and e-mails, regarding Near North National Group, Inc., Near North Insurance Brokerage, Inc., Michael Segal, Dana Berry, Matthew Walsh, Tim Gallagher, Lori Shaw, or AON Corporation and any related entity, that were given, transmitted, or shown to the federal government, including any employees or agents of the United States Department of Justice, the United States Attorney's Office for the Northern District of Illinois, or the Federal Bureau of Investigation or any other law enforcement agency, from January 1, 2001 to the present. (R. 108-1, Mot. to Quash, Ex. 1.)

The Government opposes both the enforcement of this subpoena and the granting of an evidentiary hearing. The subpoena, argues the Government, is simply a fishing expedition that seeks discovery already requested in the civil case and to harass and undermine the credibility of government witnesses. The Government primarily contends that a hearing is not warranted at this time because it would be premature given that Segal has not identified any evidence that he seeks to suppress.

**ANALYSIS**

**I. Motion to Quash**

Segal's subpoena seeks the production of documents pursuant to Federal Rule of Criminal Procedure 17(c). As delineated in the seminal Supreme Court case, *Bowman Dairy Co., et al. v. United States et al.*, Rule 17 was not intended to supplement Rule 16 as an additional means of discovery, but primarily was intended "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy*, 341 U.S. 214, 220 (1951). In order to require pre-trial production, the movant must show: "(1) that the documents are evidentiary and relevent [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699 (1974). *Nixon* summarized the test by holding that the movant must clear the three hurdles of relevancy, admissibility and specificity. *Id.* A subpoena may also be quashed on the grounds of unreasonableness or oppressiveness. Fed. R. Crim. P. 17(c)(2).

As a threshold issue, Segal argues that the Government has no standing to quash the subpoena served on Perkins Coie. A third party, however, in this case the Government, has standing to quash a subpoena if it infringes on their legitimate interests. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). In *Raineri*, the Seventh Circuit affirmed the quashing of a defense subpoena that sought to call a witness who had already been called by the prosecution and had already testified and been cross-examined. *Id.* The Court held that the prosecution's

legitimate interests in quashing included "preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility." *Id.*

In the instant case, although Segal issued a pre-trial subpoena for documents rather than a subpoena to testify, the Government shares some of the same interests that were at issue in *Raineri*. The Government claims that the subpoena on the firm that represents several potential government witnesses is part of an overall strategy "designed to harass government witnesses and seek general discovery aimed at creating and perpetuating a superfluous and irrelevant side issue." (R. 113, Mot. to Quash at 16.) In addition, given the Government's representation that parallel discovery is being sought in the civil suit against the potential government witnesses, we conclude that the Government has a well-founded interest in preventing harassment of its witness. Furthermore, although Segal insists that the material is sought as evidence to rebut the allegations of retaliatory litigation, he also concedes that material may include material to be used for impeachment purposes. (R. 111, Resp. to Mot. to Quash at 12.) The Government thus has a legitimate interest in preventing over-emphasis on the witnesses' credibility. Therefore, the Government has standing to quash the subpoena.

Next, the Court must determine whether Segal's subpoena meets the three hurdles of specificity, relevance and admissibility. To meet the specificity requirement, it is sufficient that the subpoena denote specific kinds of documents, which in this case was done. *See United States v. King*, 164 F.R.D. 542, 545 (D. Kan. 1996). The relevance and admissibility requirements are related in that an inquiry into admissibility necessarily entails an inquiry into relevance. *In re Martin Marietta Corp.*, 856 F.2d 619, 622 (7th Cir. 1988). Segal contends that the subpoenaed materials are admissible as evidence and relevant because the government witnesses may have

6

provided the Government with documents that show whether NNIB's civil law suit is retaliatory litigation. (R. 111, Resp. to Mot. to Quash at 10.) In particular, Segal speculates that the material might show that the government witnesses were motivated by "ulterior or improper business-related reasons" and thus rebut the retaliatory litigation allegations. (*Id.* at 11.) Segal's contention as to what the subpoenaed materials will show, however, strikes the Court as conjectural and Rule 17(c) only allows for the production of documents that "a defendant knows to contain relevant evidence to an admissible issue at trial." *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002). Thus, because the Court is concerned that Segal is attempting to embark on a prohibited fishing expedition, the Court quashes the subpoena on Perkins Coie.

The Court, however, is also sensitive to the defendant's need to prepare to his defense, and to that end, we order that Perkins Coie submit the documents for *in camera* review so that the Court might make a final determination as to their production to the defendant and modify the subpoena if necessary. *See United States v. Arditti*, 955 F.2d 331, 347-48 (5th Cir. 1992) (stating that in most cases district courts will review the subpoenaed material *in camera* to determine whether production is warranted). If *in camera* inspection reveals that the materials are only relevant for impeachment purposes, the Court, in its discretion, will determine whether to allow their production solely for that purpose. *Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.")

## II. Motion for an Evidentiary Hearing

Segal seeks an evidentiary hearing to establish "whether the government received hacked information from its cooperating witnesses in what appear to be numerous undocumented exchanges, and if so, what leads the government obtained from, and what use the government

7

made of, the hacked information." (R. 116, Def.'s Reply at 23.) The decision whether to hold an evidentiary hearing is left to the Court's discretion. *See United States v. Torres*, 191 F.3d 799, 811 (7th Cir. 1999). To obtain a hearing, a defendant must demonstrate that the parties dispute material issues of fact. *Id.* The defendant's burden may only be met by showing "definite, specific, detailed, and nonconjectural" facts. *Id.*

A search or seizure by a private party does not implicate the Fourth Amendment unless the party is acting as an "instrument or agent" of the government. *United States v. Crowley*, 285 F.3d 553, 558 (7th Cir. 2002). It is the movant's burden to establish by a preponderance of the evidence that the private party acted as a government agent. *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987). The relevant factors in determining whether a private party acted as a government agent include: (1) whether the government knew and acquiesced in the intrusive conduct; (2) whether the private party's purpose in conducting the search was to assist law enforcement; and (3) whether the government requested the action or offered the private actor a reward. *Crowley*, 285 F.3d at 558. A private search can be converted into a governmental search "only where there is some exercise of governmental power over the private entity, such that the private entity may be said to have acted on behalf of the government rather than for its own, private purposes." *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997) (*citing United States v. Koenig*, 856 F.2d 843 (7th Cir. 1988)) (internal quotations omitted). Thus, "[a] private party cannot be deemed a government agent unless it was induced to act by some government action." *Id.* at 325-26.

Segal's theory that the government witnesses were acting as agents of the government, which is the basis for his request for an evidentiary hearing, is supported by many detailed and

8

specific facts. Unfortunately, we find that his theory, and the facts supporting them, are at this time too conjectural, speculative and attenuated to warrant what is presently framed as an extensive, invasive and far-reaching inquiry. Specifically, the facts supporting knowledge and acquiescence on the part of the Government are flimsy, as are the facts supporting Cheley and government witnesses' motive and purpose in obtaining the information and passing it along to the Government. Finally, we are hesitant to grant an evidentiary hearing when Segal has wholly failed to identify the remedy he seeks for any established Fourth Amendment violation, be it suppression of evidence or an attack on the legitimacy of the indictment. Segal's current wait-and-see attitude, where he would like to hold an evidentiary hearing and *then* decide what relief he seeks, (R. 116, Def.'s Reply at 23), is unacceptable because it sets no parameters on the scope of the hearing itself.[3]

Turning to the Government's knowledge of or acquiescence to the witnesses' receipt of hacked information, Segal identifies five supporting facts that he believes are sufficient to establish the Government's knowledge and thus justify an evidentiary hearing. As noted above, Segal points to the four instances where government witnesses either forwarded to the FBI communications they had received from an anonymous source or verbally informed FBI agents of contact by the source. Although these instances may demonstrate the Government's knowledge that the witnesses had been contacted by a hacker, they do not establish that the Government knew of and acquiesced to the intrusive conduct. That is, based on the contacts Segal has presented,

---

[3] Furthermore, Segal fails to articulate why these issues cannot be addressed on an *ad hoc* basis at trial. The Government has assured Segal and this Court that no hacked material (which Segal is well aware based on his own forensic investigations) will be used as evidence at trial, (R. 115, Gov't's Resp. at 5); if the Government later changes course and attempts to do so, this Court could entertain a motion *in limine* or motion to suppress at that time.

there is no indication that the Government was aware that government witnesses solicited such information from Cheley or that the Government condoned or sanctioned such conduct. Indeed, it is clear from the facts presented to this Court that in at least two of the four instances the witnesses forwarded the information to the Government in part out of a concern that they were being "set up" by someone. (*See* R. 98, Def.'s App., Exs. 21-22.) These contacts with the Government could be construed as attempts to protect themselves as opposed to Government solicitation of or acquiescence in obtaining illegally hacked material. Nor is there any allegation that the Government knew Cheley personally and acquiesced in his private searches of the NNIB computer network.

In another instance, the October 31, 2001 302 Report in which Walsh attaches a copy of an internal Segal email to employees regarding the NNIB audit, Segal claims that this message was stolen from the NNIB network. But Segal acknowledges that the names of the people who forwarded and received the email are redacted, (R. 97, Def.'s Mot. at 20), so this message could just as easily have been forwarded to Walsh from a current employee of NNIB, and not been the result of hacking. Finally, Segal makes much of the witnesses' lawyer's representation in the civil suit that "we're not using these emails for any purpose, and . . . these emails are only going to the FBI." (R. 98, Def.'s App., Ex. 1.) But when read in context, this statement only indicates that the emails were forwarded to the FBI in order to protect the witnesses from a potential set-up by Segal and NNIB, not that they were being forwarded to substantively assist the Government in its case. In short, Segal fails to offer any specific, detailed facts that support the premise that the witnesses were acting as government agents and thus we conclude that the facts presented are simply too conjectural and speculative to support an evidentiary hearing at this time.

Furthermore, Segal's own argument in his memoranda to enforce the subpoena against Perkins Coie suggests that the witnesses were motivated by an improper business-related purpose, rather than an inducement by the government. (*See* R. 97, Def.'s Mem. in Support of Mot. for Hr'g at 1 ("[t]hese former Near North employees sought to gain a competitive advantage over Mr. Segal and Near North"); R. 111, Def.'s Resp. to Mot. to Quash at 11 ("any evidence that the actions of the witnesses were undertaken for ulterior or improper business-related reasons further substantiate the legitimacy of NNIB's civil suit")). In addition, excerpts from a hearing in the civil suit also suggest that Segal believes that the witnesses' actions were motivated by a business purpose. (R. 98, Def.'s App., Ex. 1.) In the motion for an evidentiary hearing, however, Segal contends that the government witnesses might have been acting as government agents and procuring the information for the Government, not for their own ends. These two arguments are inconsistent, and any contention that the witnesses were acting on an improper business-related purpose weighs against finding agency. *See Crowley*, 285 F.3d at 558 (whether the private party's purpose for conducting the search was for own ends or to assist law enforcement efforts is critical to agency determination).

The Court observes that an evidentiary hearing might be necessary in the future. At this point, however, delving into whether the government witnesses acted as agents will in essence put the witnesses on trial before commencement of the criminal trial. While reluctant to open this Pandora's box, we nevertheless are mindful of Segal's Fourth Amendment rights. If Segal renews his motion for an evidentiary hearing and outlines specific evidence that he seeks to suppress and the legal and factual grounds upon which he relies, the Court would carefully review the motion.

## CONCLUSION

For the foregoing reasons, the Court quashes Segal's subpoena on Perkins Coie and instead orders the firm to produce the subpoenaed documents for *in camera* inspection no later than August 27, 2003 for a determination as to whether their production to the defense is warranted. (R. 108-1; 113-1.) The Court also denies without prejudice Segal's motion for an evidentiary hearing. (R. 97-1.)

ENTERED: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated: August 7, 2003**