Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 | **DATE** | 1/12/2004 |
| **CASE TITLE** | | USA vs. Michael Segal, et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Near North's motion to dismiss [129-1] is granted in part and denied in part. Defendant Segal's motions to dismiss, both motions for a bill of particulars and Defendant Near North's motion to prevent abuse of the grand jury process [133-1, 136-1, 146-1, 147-1, and 148-1] are all denied. Defendant Near North Insurance Brokerage, Inc. is dismissed from count five of the second superseding indictment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 14 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 192 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 02 CR 112 |
| v. ) | |
| ) | Judge Ruben Castillo |
| MICHAEL SEGAL, DANIEL ) | |
| WATKINS, and NEAR NORTH ) | |
| INSURANCE BROKERAGE, INC. ) | |

### MEMORANDUM OPINION AND ORDER

Defendants Michael Segal and Near North Insurance Brokerage, Inc. ("Near North" or "NNIB") have filed, collectively, three different motions to dismiss, (R. 129-1; R. 146-1; R. 147-1), in which they argue that: (1) the second superseding indictment should be dismissed because prosecuting them would violate their due process rights; and (2) specified counts in the second superseding indictment fail to properly allege that Near North or Segal violated a criminal statute. They have also filed two motions for a bill of particulars, (R. 136-1; R. 148-1), and a motion to prevent grand jury abuse, (R. 133-1). For the reasons provided below, we partially grant and partially deny Near North's motion to dismiss, (R. 129-1), and deny Segal's motions to dismiss, the motions for a bill of particulars and the motion to prevent grand jury abuse, (R. 133-1; R. 136-1; R. 146-1; R. 147-1; R.148-1). Accordingly, Near North is dismissed from count five of the second superseding indictment.

### RELEVANT FACTS

On February 14, 2002, the Government filed its first indictment against Segal, which consisted of a single false-statement count. (R. 6, Indictment.) On October 31, 2002, the Government superceded the first indictment and added seven mail-fraud counts, a wire-fraud count, a RICO count and six more false-statement counts. (R. 51, First Superseding Indictment.)

190

The RICO count alleges that Near North was part of the Near North National Insurance Enterprise. (*Id.*, Count 9, ¶ 1.) The RICO count further alleges that Segal, as the principal leader of the enterprise, used "substantial economic resources to threaten to and to conduct expensive retaliatory litigation against those who would oppose his will, question his decisions, or expose his unlawful and unethical conduct." (*Id.*, Count 9, ¶ 4.) Lastly, the RICO count alleges a pattern of racketeering activity that includes twelve mail-fraud acts and three wire-fraud acts. (*Id.*, Count 9, ¶¶ 6-21.) On June 13, 2003, the Government superceded the first superseding indictment in order to add Near North as a defendant in six of the mail-fraud counts (counts two through seven) and all the false-statement counts (counts ten through sixteen). (R. 92, Second Superseding Indictment.)

Mail-fraud count one alleges that Segal and Near North "did devise, intend to devise, and participate in a scheme and artifice to defraud, and to obtain and cause to be obtained the use and benefit of money, funds, credits and other things of value that they misappropriated and misused from a Premium Fund Trust Account ("the Trust") . . . ; from money and credits due customers; and from inflated and fraudulently obtained premium payments . . . " and that they did devise, intend to devise, and participate in a scheme and artifice "to deprive the Trust, various Carriers, customers of NNIB, and others of [their] duty to provide honest services in the operation of NNIB and the maintenance of NNIB's Premium Fund Trust Account . . . ." (*Id.*, Count One, ¶ 2.) This count further alleges that they "for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be delivered by mail according to the direction thereon," a renewal application for an insurance producer license. (*Id.*, Count 1, ¶ 15.) Finally, the count alleges that Segal violated 18 U.S.C. §§ 1341 and 1346. The remaining mail-fraud

2

counts (counts two through seven), which are based on different renewal applications, differ from count one in two ways: (1) they allege that both Near North and Segal caused the renewal applications to be mailed; and (2) they do not allege that Near North and Segal violated section 1346.

The false-statement counts (counts ten through sixteen) allege that Near North and Segal "knowingly and with intent to deceive caused to be made a false, material statement to the Illinois Department of Insurance for the purpose of influencing the actions of the Illinois Department of Insurance, by causing a Renewal Application for an Insurance Producer License to be submitted to the Illinois Department of Insurance." (*Id.*, Counts 10-16.) The counts then identify the false statement as Near North and Segal's declaration that they are properly maintaining premiums in a Premium Fund Trust Account. (*Id.*)

## LEGAL STANDARDS

### I. Motion to Dismiss

The Federal Rules of Criminal Procedure permit a defendant to "raise by pretrial motion any defenses, objection, or request that the court can determine without a trial of the general issues." Fed. R. Crim. P. 12(b)(2). When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also United States v. Pitt-Des Moines, Inc.*, 970 F. Supp. 1346, 1349 (N.D. Ill. 1997) (comparing a motion to dismiss an indictment to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss); *United States v. Andrews*, 749 F. Supp. 1520, 1521 (N.D. Ill. 1990). "An indictment is sufficient if it 'first, contains the elements of the charged offense and fairly informs a defendant of the charge

3

against him which he must defend, and second, enables him to plead double jeopardy as a bar to a future prosecution.'" *United States v. Locklear*, 97 F.3d 196, 199 (7th Cir. 1996) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The question before a court on a motion to dismiss is not whether the indictment alleges sufficient facts from which a jury could find that a defendant violated a given statute, but whether the Government "conceivably could produce [such] evidence at trial." *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977). A court should dismiss the indictment only if the Government's inability to produce sufficient evidence "so convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay." *Id.*

## II. Bill of Particulars

A bill of particulars should be granted if the indictment does not set forth the elements of the offense charged or does not sufficiently apprise the defendant of the charges to enable him to prepare for trial. *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981); 41 Am. Jur. 2d *Indictments and Information* § 154 (2003). In determining whether the indictment sufficiently apprises the defendant of the charges, a court can consider the charges' complexity, the indictment's clarity and the availability of discovery. *United States v. Swiatek*, 632 F. Supp. 985, 988 (N.D. Ill. 1986). A defendant, however, is not entitled to the details of the Government's case. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991).

## III. Abuse of the Grand Jury Process

The government cannot use the grand jury for the "sole or dominant purpose" of obtaining additional information against a defendant after he has been indicted, but it can issue grand jury subpoenas when it contemplates bringing additional charges or adding new

4

defendants. *See United States v. Badger*, 983 F.2d 1443, 1459 (7th Cir. 1993); *United States v. Thompson*, 944 F.2d 1331, 1337 (7th Cir. 1991) (quoting *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985)); *see also United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001); *United States v. Leung*, 40 F.3d 577, 581-82 (2d Cir. 1994). The defendant has the burden of establishing that the Government abused the grand jury process. *Badger*, 983 F.2d at 1459.

## ANALYSIS

### I. Motions to Dismiss

There are presently three motions to dismiss before the Court: (1) Near North's motion to dismiss[1]; (2) Segal's motion to dismiss count nine for prosecutorial vindictiveness; and (3) Segal's renewed motion to dismiss counts nine through sixteen. As a preliminary matter, we deny Segal's renewed motion to dismiss counts nine through sixteen because it only raises arguments that we have already addressed and rejected. The remaining two motions contain two types of arguments: (1) the second superseding indictment should be dismissed because prosecuting Near North or Segal would violate their due process rights; and (2) specified counts fail to properly allege that Near North or Segal violated a criminal statute.

### A. Due Process Arguments

Near North and Segal assert that the second superseding indictment should be dismissed because prosecuting them would violate the Due Process Clause. First, Near North and Segal contend that the second superseding indictment contains factually contradictory theories in that it attributes conduct to Near North that was solely attributed to Segal in the previous indictments.

---

[1] This Court granted Segal's motion to adopt Near North's motion to dismiss. (R. 149.)

Next, Near North and Segal argue that the second superseding indictment should be dismissed due to prosecutorial vindictiveness.

### 1. Fundamentally Contradictory Theories

Using evidence or arguments to prosecute a defendant that fundamentally contradict evidence or arguments previously used to prosecute a different defendant for the same offense violates the Due Process Clause. *See, e.g., Smith v. Groose*, 205 F.3d 1045, 1051-52 (8th Cir. 2000). Prosecuting Near North or Segal, however, will not violate the Due Process Clause because the second superseding indictment is consistent with both the first superseding indictment and the original indictment. The second superseding indictment merely attributes conduct to Near North that the earlier indictments attributed to Segal, a corporate officer of Near North. A corporation, after all, can only act through its agents. *United States, v. 7326 Highway 45 North*, 965 F.2d 311, 316 (7th Cir. 1992); *see also N.Y. Cent. & Hudson R.R. v. United States*, 212 U.S. 481, 494-95 (1909), *cited with approval in United States v. Atl. Richfield Co.*, 465 F.2d 58, 60 (7th Cir. 1972); *United States v. Parfait Powder Puff Co.*, 163 F.2d 1008, 1009 (7th Cir. 1947). Thus, the greater specificity found in the second superseding indictment is not fundamentally inconsistent with the Government's earlier indictments.

Additionally, we note that Near North and Segal seek to transform their due process right to be prosecuted with consistent evidence and arguments into a due process right to fundamentally consistent indictments. Neither Near North nor Segal, however, has cited a single case in support of their argument that the Due Process Clause prohibits the use of inconsistent

indictments.[2] Furthermore, expanding this due process right under the facts of this case would require the Government to name all possible defendants in the original indictment. We do not believe that the Due Process Clause requires this of the Government. Thus, we deny Near North and Segal's motions to dismiss the second superseding indictment on this basis.

### 2. Prosecutorial Vindictiveness

The Government violates the Due Process Clause when it "pursues prosecution in retaliation for the exercise of a protected statutory or constitutional right." *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003). When a defendant raises a vindictive prosecution claim, he is entitled to an evidentiary hearing if he offers "sufficient evidence to raise a reasonable doubt" that the Government's prosecution is proper. *Id.* Evidence is sufficient to raise a reasonable doubt if it is objective and affirmatively shows that the prosecution "was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *Id.* (quoting *United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996)). "[E]vidence of suspicious timing alone does not indicate prosecutorial animus" because "a prosecutor's pretrial decisions, including the choice to seek increased or additional charges, are presumed valid." *Id.*

Both Near North and Segal contend that the Government is prosecuting them because

---

[2] None of the cases cited by Near North—*Smith*, 205 F.3d at 1045; *Thompson v. Calderon*, 120 F.3d 1045, 1058-59 (9th Cir. 1997); *Drake v. Kemp*, 762 F.2d 1449, 1479 (11th Cir. 1985) (Clark, J. concurring); or *United States v. Butner*, No. CRIMA980017401CRW1, 2000 WL 1842410, at *15-17 (W.D. Mo. Nov 14, 2000)—discuss indictments; these cases were decided in the procedural context of a trial in which the prosecution used evidence or arguments that contradicted evidence or arguments used in a previous trial.

they exercised their constitutional right to amend a complaint in a state civil case.[3] They amended their civil complaint to include an allegation that former Near North employees conspired to utilize information illegally obtained from Near North's computer network. In support of their claim that the Government is prosecuting them vindictively, they present the following facts: (1) a statement by the Government that it would consider the conspiracy allegations in the amended complaint when deciding whether to charge Near North in the first superseding indictment and to name Near North as a RICO enterprise; (2) the issuance of a subpoena to compel the production of all evidence supporting the conspiracy allegation after Near North and Segal amended their civil complaint; and (3) the naming of Near North as a defendant in the second superseding indictment after Segal requested an evidentiary hearing to determine whether former Near North employees were acting as government agents when they obtained the illegally-obtained information.

Near North and Segal rely primarily on suspicious timing: the timing of the subpoena and the second superseding indictment. Suspicious timing is insufficient to warrant an evidentiary hearing. *Id.* The only other evidence that Near North and Segal present is the Government's statement that it would consider the amended civil pleadings when determining whether to supercede the indictment or to name Near North as a RICO enterprise. The Due Process Clause, however, does "not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense which he was originally charged." *United States v. Goodwin*, 457 U.S. 368, 377 (1982)

---

[3] Near North seeks to dismiss the entire second superseding indictment on this basis while Segal only seeks to dismiss the RICO count.

(explaining the holding of *Bordenkircher v. Hayes*, 434 U.S. 357 (1987)). If the Government can threaten to bring additional charges if a defendant does not plead guilty, then we see no reason why the Government cannot state that it would consider an amended civil complaint when determining whether to supercede an indictment. Thus, the objective evidence presented by Near North and Segal does not raise a reasonable doubt that the prosecutors' charging decisions were proper.

Near North and Segal also assert that they are entitled to a presumption of prosecutorial vindictiveness. In *Goodwin*, the Supreme Court addressed whether a defendant who exercised his right to a jury trial is entitled to a presumption of prosecutorial vindictiveness after the prosecution brought new charges against him. The Court found that the defendant was not entitled to such a presumption. *Goodwin*, 457 U.S. at 384. While the *Goodwin* Court did not create a *per se* rule against the use of such presumptions after a defendant exercises a pre-trial right, this decision prompted the Seventh Circuit to state that presumptions "ordinarily arise after trial, following the defendant's exercise of his right to de novo review." *Falcon*, 347 F.3d at 1005. Although the Seventh Circuit did not delineate the "extraordinary" pre-trial situations that would warrant the presumption, we do not believe that exercising a right to amend a civil complaint falls within that realm.

The *Goodwin* Court, by focusing on the "nature" of the right exercised rather than the specific facts of the case, held that the right to a jury trial did not warrant a presumption because a jury trial did not require a court "to do over what it thought it had already done," because "a prosecutor has no 'personal stake' in a bench trial and thus no reason for 'self-vindication'" and because there is no "institutional bias against the retrial of a decided question." *Goodwin*, 457

9

U.S. at 382-83. Near North and Segal assert that the prosecution retaliated against them because Near North exercised its constitutional right to amend a civil complaint. Like the *Goodwin* Court, we find that "[t]he possibility that a prosecutor would respond to [the exercise of this right] by bringing charges not in the public interest could only be explained as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *Id.* at 384. Thus, Near North and Segal are not entitled to a presumption of vindictiveness based on their invocation of their right to file an amended complaint in their civil lawsuit.

## B. Failure to State a Claim

Near North and Segal next assert that certain counts fail to properly allege that they violated a criminal statute. They claim that: (1) the false-statement counts (counts ten to sixteen) fail to allege 18 U.S.C. § 1033(a)(1) violations; and (2) the mail-fraud counts (counts one through seven) fail to allege 18 U.S.C. § 1341 violations. Near North also argues that mail-fraud count five is barred by the statute of limitations.

### 1. False-statement Counts

Near North asserts that the false-statement counts (counts ten to sixteen) fail to allege a violation of 18 U.S.C. § 1033(a)(1). The parties vigorously dispute the plain-language meaning of 18 U.S.C. § 1033(a)(1).[4] This statute prohibits making false statements:

---

[4] This debate is mostly the result of the embarrassing fact that *both sides* misstated the plain language of the statute in their supporting memorandum. While Near North first argues that the statute requires a false statement in a "financial report or document," (R. 135, Def.'s Resp. at 6), the Government counters that the "*actual* plain language of 18 U.S.C. § 1033(a)(1) prohibits the making of a false statement "in *connection with* a financial report or document," (R. 183, Gov't's Consolidated Resp. at 3). In addition to misquoting the *actual* plain language, the Government also omits the end of the sentence: "presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency or an agent or

> (A) in connection with any financial reports or documents presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of such person, and
> (B) for the purpose of influencing the actions of such official or agency or such appointed agent or examiner . . . .

18 U.S.C. § 1033(a)(1). Each false-statement count alleges that Near North and Segal "knowingly and with intent to deceive caused to be made a false, material statement [in a renewal application] to the Illinois Department of Insurance for the purpose of influencing the actions of the Illinois Department of Insurance." The counts then identify the alleged false statement as Near North and Segal's declaration that they properly maintain their Premium Fund Trust Account.

Near North and Segal assert that these counts should be dismissed because they fail to allege an essential element of the offense. *See Locklear*, 97 F.3d at 199. Specifically, Near North and Segal argue that the false-statement counts do not allege that they made a false statement in connection with a financial report or document that was presented to an insurance regulator. The false-statement counts, however, do allege that they presented insurance producer license renewal applications to the Illinois Department of Insurance, in which Near North and Segal allege that they properly maintain their Premium Fund Trust Account.

A reasonable jury could rationally conclude that these applications were financial reports or documents. Given the breadth of this statute—it applies to "any financial report or document presented to any insurance regulatory official or agency"—it would be premature for this Court to dismiss these counts without affording the Government the opportunity to prove that

---

examiner appointed by such official or agency to examine the affairs of such person . . . ."

Defendants made a false statement in connection with a financial report or document that was presented to an insurance regulator. The indictment only needs to allege all the statutory elements; it does not need to allege all the facts that the Government intends to rely on at trial. *See Castor*, 558 F.2d at 384. Accordingly, we find that counts ten through sixteen properly allege that Near North or Segal violated 18 U.S.C. § 1033(a)(1) and deny Near North and Segal's motion to dismiss these counts.

## 2. Mail-fraud Counts

Near North and Segal assert that the mail-fraud counts (counts one through seven) should be dismissed because: (1) the mailings underlying these counts cannot support a mail-fraud prosecution and (2) the counts do not allege that they deprived the Illinois Department of Insurance of a tangible property right.

### a. Legally Insufficient Mailings

Near North and Segal claim that the mail-fraud counts cannot support a criminal prosecution because they are based on blank license renewal application forms automatically sent by the Illinois Department of Insurance. The mail-fraud counts allege that Near North and Segal "for the purpose of executing the aforesaid scheme and attempting to do so, did knowingly cause to be delivered by mail to the direction thereon," a renewal application for an insurance producer license.[5] (R. 92, Second Superseding Indictment, Count 1, ¶ 13.) As a preliminary matter, it is noteworthy that the Government based all seven mail-fraud counts on blank forms sent by the Illinois Department of Insurance rather than on the completed forms. Nonetheless, we conclude

---

[5] Segal is the only defendant in mail-fraud count one while Near North and Segal are both defendants in mail-fraud counts two through seven.

that these mailings can support a mail-fraud prosecution.

Near North and Segal are charged with violating 18 U.S.C. § 1341. This statute provides in relevant part that whoever, for the purpose of executing or attempting to execute a fraudulent scheme:

> places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18. U.S.C. § 1341. A mailing need not be an "essential part of the scheme;" it can be "incident to an essential part of the scheme, or a step in [the plot]." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989). Each count alleges that Near North and Segal caused the renewal applications to be mailed in furtherance of its fraudulent scheme. Thus, even though they are based on blank renewal applications, the mail-fraud counts sufficiently allege that Near North and Segal violated 18 U.S.C. § 1341.

Near North and Segal, nonetheless, argue that a mail-fraud prosecution cannot be based on blank renewal application forms that are automatically mailed by the Illinois Department of Insurance because those forms were caused to be mailed under the imperative command of state law. In *Parr v. United States*, 363 U.S. 370, 391 (1960), the Supreme Court stated that "it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail fraud statute . . . ." The defendants in *Parr* were required by the state constitution to collect taxes. They were ultimately convicted of mail-fraud

for misappropriating some of the tax money, but they challenged their conviction arguing that the mailings—tax collection letters and receipts—were not in furtherance of the fraudulent scheme because they were legally compelled. The Supreme Court agreed with the defendants but explained that "the legally compelled mailings . . . were not shown to have been unlawful step(s) in a plot, part(s) of the execution of the fraud, incident to an essential part of the scheme, or to have been made for the purpose of executing such scheme . . . ." *Id.* at 390 (internal citations and quotations omitted).

The Seventh Circuit in *United States v. Green*, 786 F.2d 247, 250 (7th Cir. 1986), explained that *Parr*, rather than prohibiting legally compelled mailings from providing the basis of a mail-fraud prosecution, merely reinforced the prosecution's burden to prove that the mailings were "important to the successful execution of the fraud." By following the Seventh Circuit's interpretation of *Parr* and applying the appropriate standards for a motion to dismiss, we deny Near North and Segal's motions because it is conceivable that the Government can prove that causing the renewal applications to be mailed were "step(s) in a plot, part(s) of the execution of the fraud, incident to an essential part of the scheme, or to have been made for the purpose of executing such scheme." *Parr*, 363 U.S. at 390. A reasonable jury could rationally conclude, if the Government meets its burden, that Defendants caused these renewal applications to be mailed in furtherance and to sustain their alleged fraudulent scheme.

Near North also asserts that the mailings did not further the alleged fraudulent scheme because they "conflict with the purpose of the scheme." *Castor*, 558 F.2d at 385. We are unpersuaded by Near North's argument because it is conceivable that the Government will present evidence at trial proving that Near North and Segal caused these mailings in furtherance

of the fraudulent scheme—either to perpetuate or conceal the scheme. *Id.* at 384. While the Illinois Department of Insurance sent the mailings to identify and eliminate fraudulent conduct, the indictment alleges that Near North and Segal caused the Illinois Department of Insurance to mail the renewal applications in furtherance of their fraudulent scheme. It is not the province of this Court to determine a contested issue of fact prior to trial. This Court concludes that the allegations of mail fraud are legally sufficient to survive Defendants' motion to dismiss.

### b. Legally Insufficient Property

Near North and Segal further argue, relying on *Cleveland v. United States*, 531 U.S. 12 (2000), that the mail-fraud counts do not allege that Near North or Segal violated 18 U.S.C. § 1341 because these counts do not allege that they deprived the Illinois Department of Insurance of a tangible property right. The Supreme Court held in *Cleveland*, 531 U.S. at 20, that using the mail to fraudulently obtain a state license does not constitute mail fraud because a state license is not a tangible property right. Before reaching this conclusion, however, the Supreme Court expressly stated that the case did not implicate "the intangible right of honest services." *Id.* The mail-fraud counts against Near North and Segal allege that they devised, intended to devise and participated in a scheme and artifice "to deprive the Trust, various Carriers, customers of NNIB, and others of [their] duty to provide honest services in the operation of NNIB and the maintenance of NNIB's Premium Fund Trust Account . . . ." (R. 92, Second Superseding Indictment, Count 1, ¶ 2; Counts 2-7, ¶ 1 (incorporating Count 1, ¶ 2).) These mail-fraud counts also specifically allege that Near North and Segal "did devise, intend to devise, and participate in a scheme and artifice to defraud, and to obtain and cause to be obtained the use and benefit of money, funds, credits and other things of value that they misappropriated and misused from a

15

Premium Fund Trust Account ("the Trust") . . . ; from money and credits due customers; and from inflated and fraudulently obtained premium payments . . . ." (*Id.*) Thus, unlike *Cleveland*, the mail-fraud counts in this case allege that Near North and Segal obtained both tangible and intangible property. *See United States v. Hausmann*, 345 F.3d 952, 956 (7th Cir. 2003). Accordingly, we deny Near North and Segal's motion to dismiss the mail-fraud counts on this basis.

### 3. Statute of Limitations

Count five alleges that Near North caused a renewal application to be mailed in or about April 1998. Near North claims that this count is time-barred by 18 U.S.C. § 3282. This statute provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). "In a mail fraud case, the statute of limitations runs from the date of the mailings." *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992). The second superseding indictment, which first named Near North as a defendant, was filed on June 13, 2003—more than five years after the date of the mailing. Thus, we dismiss Near North from mail-fraud count five.

### II. Motions for a Bill of Particulars

Both Near North and Segal have filed motions for a bill of particulars. Near North, on the one hand, seeks supplemental information on thirteen particulars, including such broad requests as the identification of "the role and conduct of each defendant that is alleged to be in furtherance of the purported mail fraud scheme" and "each act or omission that is attributed to" Near North. Segal, on the other hand, seeks supplemental information about three "manners and means"

alleged in the second superseding indictment that were not included in the first superseding indictment.

This Court has discretion to direct the Government to file a bill of particulars and will only exercise its discretion if the indictment does not set forth the elements of the offense charged or does not sufficiently apprise the defendant of the charges to enable him to prepare for trial. *Kendall*, 665 F.2d at 134. In determining whether the indictment sufficiently apprises the defendant of the charges, this Court considers the charges' complexity, the indictment's clarity and the availability of discovery. *Swiatek*, 632 F. Supp. at 988. While the charges are indeed complex, we find that the indictment is sufficient clear and discovery has been abundantly available to enable both Near North and Segal to prepare for trial. Near North's motion is denied because it is so broadly worded that we view it as an inappropriate attempt to obtain the details of the Government's case. *See Glecier*, 923 F.2d at 502. Segal's motion is denied because the new allegations do not render the second superseding indictment so ambiguous that Segal cannot prepare for trial, especially considering the fact that the Government has already provided him with a bill of particulars as well as substantial discovery.

### III. Motion to Prevent Grand Jury Abuse

Near North asserts that the Government is improperly conducting pre-trial criminal discovery through the use of grand jury subpoenas. In order to prevent further improper pre-trial criminal discovery, Near North requests that this Court issue an order requiring the Government to timely serve Near North with a copy of each grand jury subpoena directed to current or former employees of Near North or any related entity and to produce copies of each current or former employee's grand jury transcript for review immediately following their appearance before the

grand jury. The government contends that it is issuing grand jury subpoenas, not to conduct pre-trial criminal discovery, but pursuant to its continuing investigation into further potential charges against Near North or other Near North entities.

Once a defendant has been indicted, the government cannot use the grand jury for the "sole or dominant purpose" of obtaining additional information against him, *Thompson*, 944 F.2d at 1137, but the government can issue grand jury subpoenas when it contemplates bringing additional charges or adding new defendants, *Badger*, 983 F.2d at 1459. The Government has represented to this Court and has presented sufficient *in camera* documentation to establish that it is legitimately considering bringing new charges against Defendants and considering charging new individuals and entities. Indeed, on December 18, 2003, this Court denied a motion to quash a grand jury subpoena because of the Government's submissions. On the basis of the Government's submissions, we cannot conclude that the "sole or dominant purpose" of the grand jury subpoenas is pre-trial discovery. Accordingly, Near North's motion to prevent abuse of the grand jury process is denied.

## CONCLUSION

For the reasons provided above, we partially grant and partially deny Near North's motion to dismiss, (R. 129-1), and deny Segal's motions to dismiss, both motions for a bill of particulars, , and Near North's motion to prevent abuse of the grand jury process, (R. 133-1; R. 136-1; R. 146-1; R. 147-1; R.148-1). First, we find that prosecuting Near North and Segal would not deny them of their due process rights. Second, we find that the mail-fraud counts properly allege violations of 18 U.S.C. §1341, but that mail-fraud count five as to Near North is barred by the

statute of limitations. Third, we find that false-statement counts ten through sixteen properly allege a violation of 18 U.S.C. § 1033(a)(1). Fourth, we find that a bill of particulars is not warranted because the indictment sufficiently apprises Near North and Segal of the charges to enable them to prepare for trial. Finally, we find that Near North has not established that the Government abused the grand jury process. Accordingly, Near North is dismissed from count five of the second superseding indictment.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: January 12, 2004**