# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 | **DATE** | 3/31/2004 |
| **CASE TITLE** | USA vs. Michael Segal, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Final Pretrial Conference reset to 4/15/04 at 11:30 a.m. Enter Memorandum Opinion and Order. Defendants' motion regarding attorney-client privilege issues [209-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 3 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 249 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RO | courtroom deputy's initials | | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 02-CR-112 |
| | ) | |
| MICHAEL SEGAL, DANIEL | ) | Judge Ruben Castillo |
| WATKINS, and NEAR NORTH | ) | |
| INSURANCE BROKERAGE, INC. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses Defendants Michael Segal and Near North Insurance Brokerage, Inc.'s ("Defendants") motion regarding attorney-client privilege issues. (R. 209-1.) Defendants request that the Court order the Government: (1) not to review or use any of Defendants' attorney-client privileged communications for any purpose; (2) to identify with particularity which seized electronic communications its agents have reviewed; and (3) to specify all seized attorney-client privileged documentary materials. Defendants also request that the Court suppress: (1) all of Defendants' attorney-client privileged communications in the Government's possession and any evidence derived from those communications; and (2) all evidence and leads developed from grand jury testimony by former Near North Insurance Brokerage, Inc. ("Near North") executives Steven Coleman and Jeffrey Ludwig.

For the reasons provided below, we order the Government not to review the documents on Defendants' privilege log and not to use these documents as evidence at trial unless the Court determines that Defendants' claim of privilege is unfounded. We otherwise deny Defendants' motion.

249

**RELEVANT FACTS**

**I. Seized Materials**

In January 2002 the Government seized over two hundred boxes of documents and a significant amount of electronic information: several personal computers, including Segal's computer, and back-up tapes of Near North's file, payroll, fax, and accounting system servers. (R. 209, Defs.' Mot., Ex. 2, FBI Report.) In November 2002 Segal moved for the return of all seized attorney-client privileged communications and to bar the Government from using these communications for any purpose. (R. 60, Def.'s Mot.) The Government objected that the attorney-client privilege is an evidentiary privilege that only "prohibits the introduction of privileged communications at trial or in the grand jury over the objection of the privilege holder." (R. 65, Gov't's Consol. Resp. at 21.) The Court granted Segal's motion, (R. 69, February 5, 2003 Min. Order), but subsequently granted the Government's motion for reconsideration and ordered Segal to prepare a privilege log, (R. 86, May 13, 2003 Min. Order). In September 2003 Segal gave the Government a log identifying approximately 13,000 allegedly privileged communications. (R. 209, Defs.' Mem. at 12.)

**A. Electronic Communications**

Defendants have repeatedly requested that the Government identify which of the seized electronic communications it has reviewed. (*Id.* at 13-14.) Defendants allege that the Government reviewed privileged electronic communications because it failed to employ a meaningful screening procedure to ensure that its agents did not review privileged information. (*Id.* at 9.) Defendants identify several available screening procedures, including commercially available software that could have segregated privileged information; the exclusion of the names

of all of Defendants' known attorneys; and the use of an independent third-party to segregate the privileged information. (*Id.* at 2.) Defendants also claim that the Government failed to follow Department of Justice guidelines for searching seized electronic materials. These guidelines provide that:

> [w]hen agents seize a computer that contains legally privileged files, a trustworthy third party must comb through the files to separate those files within the scope of the warrant from files that contain privileged material. After reviewing the files, the third party will offer those files within the scope of the warrant to the prosecution team.[1]

United States Department of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* § 7(b) (July 2002). Defendants seek a list of the reviewed documents so that they can determine whether any of the evidence that the Government intends to introduce at trial was derived from the Government's review of an attorney-client privileged communication. (R. 209, Defs.' Mem. at 17.)

The Government states that it "attempted to create a system for the efficient review of stored-electronic materials." (R. 218, Gov't's Resp. at 12.) It explains that its agents could only review a small portion of the seized materials because the Government's computers only contained the hard drives of nine individuals, one of whom was Segal.[2] (*Id.* at 13.) It claims that, rather than browse these hard drives, its agents attempted to find documents by using search programs to identify documents relating to particular search terms.[3] (*Id.*) Next, the Government

---

[1] One of the preferred methods identified in the guidelines for segregating privileged communications is the use of a prosecution "taint team." *Id.*

[2] The other eight individuals were three members of Segal's family, Daniel Watkins, accountant Anthony Senese, account executive Mike Mackey, accountant Larry Kroc, and chief financial officer Tom McNichols. (*Id.*)

[3] The Government provided Defendants with all of the search terms and the document files identified by the search programs. (Id.) The Government had previously stated that it has

3

claims that its agents could only review the e-mails of a small number of Near North's 650 employees: the e-mail folders of twenty employees[4] and e-mail accounts of thirty-five employees that were converted to text files. (*Id.* at 14.) The Government does not specify the names of the thirty-five employees whose e-mail accounts were converted to text files, but states that it did convert Segal's e-mail account and did not convert Near North general counsel Sherri Stanton's e-mail account. (*Id.*)

The Government acknowledges that some of its agents might have inadvertently reviewed attorney-client privileged documents, but asserts that they did not make a conscious effort to do so. (*Id.* at 3, 8.) The investigatory agents all aver that they did not knowingly review any privileged communications and are unaware of any privileged communications that they may have reviewed.[5] (*Id.*, Exs. A-C, Agents Affidavits.) They claim that they did not review any

---

always excluded Harvey Silets, Dick Lipton, and Sherri Stanton. (R. 77, Gov't's Mot. to Reconsider at 5.) Defendants state that their review of the information provided by the Government proves that the Government did not always exclude the names of Near North's attorneys. (R. 209, Defs.' Mem. at 2.) Defendants also claim that the Government failed to exclude communications to Near North's outside counsel Zachary Stamp. (*Id.* at 14 n.5.)

[4] The twenty employees are Bob Lohr, Ben Schull, Barb Spain, Duncan Ashurst, Dana Berry, Dave Macek, David O'Gara, Daniel Watkins, Gene Rak, Jonathan Segal, Jim Libbe, Jeffrey Ludwig, Lisa Dicaro, Maria Salazar, Matt Walsh, Robert Carter, Roger Johnson, Roger Torneden, Sheila Kelly, and William Bartholomay. (*Id.*)

[5] *See* R. 218, Gov't's Resp., Ex A., Murphy Affidavit ("I did not review any material . . . that contained any indication that they were attorney-client privileged. . . . Had I seen [an indication that a document was attorney-client privileged] I would not have reviewed the document. . . . I would not have reviewed any e-mails that had any markings of attorney-client privilege. . . . I am unaware of any e-mails that I reviewed that contained any privileged materials."); Ex. B, Higgins Affidavit ("I have not reviewed any files . . . that contained any indication that they were attorney-client privileged. . . . Had I seen [an indication that a document was attorney-client privileged] I would not have reviewed the document. . . . I did not review any [e-mails] that had any markings of Attorney-client privilege. . . . I am unaware of any e-mails that I reviewed that contained any privileged materials."); Ex. C, Peregord Affidavit ("I did not review any [e-mails] that had markings of attorney-client privilege. . . I am unaware

4

e-mails to or from Near North's attorneys: Silets, Buchman, Lipton, or Stanton.[6] (*Id.*) They further aver that they printed and saved any electronic document that they believed could be of use to the investigation.[7] (*Id.*) The Government contends that it does not need to identify the reviewed electronic communications because it does not intend to use any attorney-client privileged communications or any evidence obtained from any possible review of a privileged communication. (*Id.* at 16.) Additionally, the Government asserts that Defendants are not entitled to the suppression of any derivative evidence. (*Id.* at 2.)

**B. Documentary Materials**

The Government also seized a substantial number of documents when it executed the search warrants, including some from Near North's general counsel Stanton's office. (R. 209, Defs.' Mem. at 6.) Defendants assert that, even though the Government claims to have segregated, and not reviewed, the boxes of potential attorney-client privileged documents taken from Stanton's office, the Government has never conclusively specified the number of segregated boxes. (*Id.* at 9-10.) Accordingly, Defendants request that the Government identify the segregated boxes containing potentially privileged documents. (*Id.* at 4.) The Government states that the five boxes that were segregated and not reviewed by the prosecution team are the boxes numbered 84, 85, 90, and 208 and an unlabelled box containing three bags, two envelopes, and a

---

of any e-mails that I reviewed that contained any privileged material.").

[6] Agent Higgins does not allege that she did not review any e-mails to or from general counsel Stanton; she only alleges that she "did not attempt to review any e-mail communications to or from her. . . ." (*Id.*, Ex. B, Higgins Affidavit.)

[7] The Government provided the Court with copies of these documents, but the Defendants assert that the Government's production does not include every document printed, let only reviewed, by its agents. (R. 238, Defs.' Reply at 5.)

5

manila folder. (R. 218, Gov't's Resp. at 16, n.2.) Defendants' reply did not mention this issue, so the Court concludes that the Government's response was sufficient.

## II. Privileged Communications from Steven Coleman and Jeffrey Ludwig

### A. Steven Coleman

On March 11, 2002 the Government provided Steven Coleman, a former Near North executive, with a proffer letter stating that he:

> is not expected to waive his attorney-client privilege or otherwise disclose confidential communications made to and from any attorney for the purpose of receiving legal advice relating to his conduct during the period of his employment at Near North.

(R. 238, Defs.' Reply, Ex. 3, Proffer Letter.) The Government then provided him with an immunity letter stating that immunity is conditioned on his agreement that he:

> will interpose no objection to or otherwise refuse to answer any question posed by the office, nor will you refuse to provide any document or part thereof requested by this office relating to this investigation, based on a claim of attorney-client privilege, except as such questions or requests seek disclosure of confidential attorney-client privileged communications between your self and your present attorneys . . . or other confidential attorney-client privileged communications made with current or future attorneys that you retain or have retained to represent you in this investigation or other related proceedings.

(*Id.*, Ex. 4, Immunity Letter.) After receiving immunity, Coleman testified before a grand jury about communications he exchanged with Near North's outside counsel regarding Near North's Premium Fund Trust Account.

The grand jury first asked Coleman whether Near North's outside counsel ever responded to a legal research request made by one of Near North's outside auditors. (R. 244, Gov't's Report, Ex. E, Coleman Deposition at 72.) Before answering the question, Coleman asked a government agent if he should answer the question, and the agent told him to "[g]o ahead and

6

answer." (*Id.* at 73.) The grand jury also asked Coleman if he ever asked outside counsel about his "own potential exposure." (*Id.* at 76) Coleman answered this question as well, explaining that outside counsel provided him with a legal memorandum discussing civil liabilities and criminal penalties. (*Id.* at 76-81.) Finally, after receiving immunity Coleman gave the Government unredacted documents that he had previously provided in redacted form. (R. 238, Defs.' Reply at 9-10.)

**B. Jeffrey Ludwig**

Jeffrey Ludwig, another former Near North executive, also testified before a grand jury in this case where he was asked about two communications he sent to Near North's general counsel Stanton. The first communication was an e-mail he sent to Stanton asking a question about the renewal of property and casualty insurance in Mississippi. (R. 244, Gov't's Report, Ex. D, Ludwig Deposition at 30.) In response, Stanton provided Ludwig with a memo written by a student legal intern, which Ludwig then gave to the Government. (*Id.*) The second communication was an e-mail that Ludwig sent to Stanton titled "Legal Opinion." (*Id.* at 38-39.) The first sentence and last sentences of the e-mail reads as follows:

> I know that you are unable to provide personal counsel to me or others as it relates to our premium trust imbalance given your duties and obligations as corporate counsel to Near North National Group.
>
> * * *
>
> I understand that you are not providing me with personal legal advice.

(R. 244, Gov't's Report, Ex. D, E-mail.) Ludwig also gave this e-mail to the Government.

**ANALYSIS**

Defendants first request that the Court order the Government not to review or use Defendants' attorney-client privileged communications for any purpose. We decline to issue such a broad order because the attorney-client privilege is a narrowly-construed evidentiary rule designed to "encourage full disclosure and to facilitate open communication between attorneys and their clients." *United States v. BDO Seidman*, 337 F.3d 802, 810-11 (7th Cir. 2003). We will issue a narrower order to protect Defendants' attorney-client privileged communications. We order the Government not to review the documents on Defendants' privilege log and not to use these documents as evidence at trial unless and until the Court determines that Defendants' claim of privilege is unfounded.

Defendants claim that the Government should also be barred from introducing at trial any evidence derived from its violation of Defendants' attorney-client privilege. Under the fruit of the poisonous tree doctrine, a defendant is entitled to the suppression of derivative evidence obtained from a constitutional violation. *Wong Sun v. United States*, 371 U.S. 471, 416 (1963). The attorney-client privilege is an evidentiary privilege, not a constitutional right. *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989). The violation of a defendant's attorney-client privilege thus does not require the suppression of derivative evidence. *See United States v. Marashi*, 913 F.2d 724, 731 n.11 (9th Cir. 1990) (stating that "no court has ever applied [the fruit of the poisonous tree doctrine] to *any* evidentiary privilege") (emphasis in original). Accordingly, Defendants would only be entitled to the suppression of derivative evidence if the Government's conduct violated one of their constitutional rights.

8

Defendants assert that the suppression of derivative evidence is warranted because the Government's disregard for their attorney-client privilege violated their constitutional right to due process. The violation of a defendant's attorney-client privilege, however, will only violate the defendant's due process rights if the violation was caused by serious governmental misconduct that is outrageous enough to shock the conscience of the Court. *See United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989); *United States ex rel. Shiflet v. Lane*, 815 F.2d 457, 465-66 (7th Cir. 1987).[8] Defendants identify two types of governmental action that justifies the suppression of derivative evidence: (1) the Government's disregard of their attorney-client privilege when it reviewed the seized electronic communications by failing to screen its agents from the seized privileged communications; and (2) the Government's elicitation of Near North's former privileged communications from former Near North executives.

**I. The Government's Review of the Seized Electronic Communications**

The Government's ill-advised failure to pro-actively use the screening procedures identified by Defendants did not violate Defendants' due process rights. First, there is no evidence that the Government deliberately read communications that it affirmatively knew were protected by Defendants' attorney-client privilege. The agents who reviewed the materials state that they would not have knowingly reviewed any attorney-client privileged information and that they did not attempt to read e-mails to or from Defendants' attorneys. The Government did not

---

[8] The Third and Tenth Circuits have applied a three-part test to determine when governmental "misconduct is outrageous enough to shock the conscience of the court." *See United States v. Kennedy*, 225 F.3d 1187, 1194-95 (10th Cir. 2000); *United States v. Voigt*, 89 F.3d 1050, 1067 (3rd Cir. 1996). This test requires: (1) governmental knowledge of the attorney-client relationship; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice. *Id.*

9

even convert any of Near North's general counsel's e-mails into an accessible format. These facts indicate that, while the Government was negligent in relying on its agents' ability to avoid reading attorney-client privileged information, the Government did not deliberately read communications that it knew were attorney-client privileged.

Additionally, Defendants have not identified any derivative evidence that they believe the Government intends to introduce at trial and the Government has repeatedly insisted that it does not intend to introduce any such evidence at trial. Given these facts, we do not foresee that Defendants will be prejudiced as a result of the Government's actions. The Government's sloppy handling of Defendants' electronic information should not be condoned, but it is not of sufficient magnitude to violate Defendants' due process rights and thus warrant the "strong medicine" of derivative evidence suppression. *See White*, 879 F.2d at 1513.

## II. The Government's Elicitation of Attorney-Client Privileged Communications

The Government's elicitation of Near North's attorney-client privileged communications from former Near North executives also did not violate Defendants' due process rights. As a threshold matter, we find that Defendants are placing the cart before the horse because they have not affirmatively established that any of the elicited communications are privileged. In order to resolve the present motion, we assume that at least some of the elicited communications were attorney-client privileged.[9]

---

[9] Our review of the communications, however, indicates that many of them are not privileged. For example, Ludwig's "Legal Opinion" e-mail appears to be a personal request for legal advice, as does Coleman's communication to Near North's outside counsel. Additionally, the communication to Coleman from Near North's outside counsel appears to be unprivileged because it was a response to a request from a third-party: Near North's outside auditor. *See Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Finally, Ludwig's e-mail about compliance in Mississippi appears to

10

The Government's decision to grant Coleman immunity in exchange for his testimony did not violate Defendants' due process rights. The only evidence Defendants have provided in support of their argument that the Government improperly elicited Near North's privileged communications by offering Coleman immunity is an ambiguous immunity letter and Coleman's subsequent provision of unredacted documents. This evidence does not establish that the Government implicitly or explicitly conditioned Coleman's immunity on his disclosure of Near North's attorney-client privileged communications. The Court understands that a former corporate official may disregard his former corporation's evidentiary right to keep certain matters confidential when attempting to comply with the full disclosure requirements of an immunity letter. Such a disclosure does not mean that the Government engaged in serious misconduct by affirmatively eliciting privileged information.

Similarly, the fact that the Government asked Coleman and Ludwig about privileged communications did not violate Defendants' due process rights. Again, a due process violation requires serious governmental misconduct that shocks the Court's conscience. *See White*, 879 F.2d at 1513; *Shiflet*, 815 F.2d at 465-66. Asking a handful of inappropriate questions is not shocking, especially when Coleman and Ludwig told the Government that the communications related to personal legal advice rather than corporate legal advice. The Government cannot be faulted for relying on that representation and inquiring about those communications, especially since some of them appear to have actually been for personal legal advice.

---

be privileged. We decline to affirmatively decide whether these communications are privileged because the briefing did not adequately specify or address each communication.

11

Defendants are entitled to the suppression of all disclosed privileged communications that they can prove are attorney-client privileged as to Near North. They should make the appropriate request explaining why specific communications are attorney-client privileged. *See United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). We have definitively concluded that the Government's actions, both independently and when considered on the whole, did not violate Defendants' due process rights. Therefore, any privilege determinations will not entitle Defendants to the suppression of derivative evidence.

## CONCLUSION

For the reasons provided above, Defendants' motion is partially granted and partially denied. (R. 209-1.) We order the Government not to review any of the documents from Defendants' privilege log or to introduce any of those documents as evidence at trial, unless the Court determines that Defendants' claim of privilege is unfounded. To obtain suppression of any privileged communications that are not on the privilege log, Defendants must make the appropriate motion explaining why these communications are privileged. Defendants' motion is otherwise denied. (R. 209-1.)

All issues with respect to any potential privileged documents must be raised at the appropriate time <u>outside</u> of the presence of the jury. Any questions about this issue should be raised at the April 15, 2004 Final Pre-trial Conference.

ENTERED: _____
**Judge Ruben Castillo**
**United States District Court**

**Dated: March 31, 2004**