# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 | **DATE** | 4/15/2004 |
| **CASE TITLE** | USA vs. Segal, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Government's motion in limine requesting a ruling on whether ninety-one communications are protected by the attorney-client privilege [243-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | APR 1 6 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | 263 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| | RO | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 02-CR-112 |
| | ) | |
| MICHAEL SEGAL and NEAR NORTH | ) | Judge Ruben Castillo |
| INSURANCE BROKERAGE, INC. | ) | |
| | ) | |

DOCKETED

APR 1 6 2004

## MEMORANDUM OPINION AND ORDER

This opinion addresses the Government's motion *in limine* requesting a ruling on whether ninety-one communications are protected by the attorney-client privilege.[1] (R. 243-1.) In September 2003, Defendant Michael Segal gave the Government a log identifying approximately 13,000 seized electronic communications that he claims are privileged. The Government created a "taint team" of prosecutors who are screened off from the prosecution team. The taint team reviewed most of the 13,000 alleged privileged communications to determine the validity of Defendants' claims. The taint team identified ninety-one communications that it asserts are not attorney-client privileged and requested that the Court review these communications *in camera*. After reviewing these ninety-one communications, we partially grant and partially deny the Government's motion *in limine*. (R. 243-1.)

## LEGAL STANDARDS

### I. Attorney-Client Privilege

The attorney-client privilege prohibits the compelled disclosure of "confidential communications between a client and an attorney for the purpose of obtaining legal advice."

---

[1] Some of these communications are individual e-mails, others are e-mail strings (an e-mail that responds to and includes previous e-mails), and some are actually multiple related e-mails.



*Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000). The privilege applies to statements made by a client to his lawyer and responsive statements made by the lawyer where the responses "rest on confidential information obtained from the client . . . or where those communications would reveal the substance of a confidential communication by the client." *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citation omitted); *see also Nedlog Co. v. ARA Servs., Inc.*, 131 F.R.D. 116, 117 (N.D. Ill. 1989) ("What is entitled to protection is really limited to the communication of confidences from client to lawyer, whether any such confidences (or sometimes the fact that confidences have been communicated) is disclosed in a client-authored document or a lawyer-authored response."). The privilege is strictly construed because it excludes relevant information. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). The attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged. *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The Court's privilege determinations are reviewed under the clearly erroneous standard. *Rehling*, 207 F.3d at 1019.

Under the crime-fraud exception, communications that would otherwise be protected by the attorney-client privilege lose their protected status if they were "'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (declining, however, to determine the "quantum of proof necessary ultimately to establish the applicability of the crime-fraud exception"). Once the party arguing for the crime-fraud exception has provided prima facie evidence (evidence sufficient to require an explanation)

that a party sought legal advice in order to commit a fraud or crime, the Seventh Circuit requires the party asserting the privilege to satisfactorily explain why it is entitled to the privilege. *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993); *In re Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988); *see also Clark v. United States*, 289 U.S. 1, 15 (1933) (requiring the party challenging the assertion of privilege to provide evidence that gives "colour to the charge" and establish that its claim "has some foundation in fact"); *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 78 (1st Cir. 1999) (summarizing standards used by various circuit courts). The Court's crime-fraud determinations are reviewed under an abuse of discretion standard. *Davis*, 1 F.3d at 609.

A party can only assert the attorney-client privilege if it sought legal advice on its own behalf. For example, a corporation cannot assert a claim of privilege when one of its officers sought personal legal advice, even if that officer sought it from the corporation's general counsel. *See United States v. Walter*, 913 F.3d 288, 392 (7th Cir. 1990). Similarly, a trustee cannot assert the attorney-client privilege against trust beneficiaries if he sought legal advice solely in his capacity as trustee for the benefit of the beneficiaries. *See United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999). Under these circumstances, the trustee lacks standing to claim that a communication is protected by the attorney-client privilege. *Id.*

## II. Attorney Work Product Doctrine

The attorney work product doctrine prohibits the compelled disclosure of documents created by an attorney in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238 (1975). This protection disappears, however, if at the time the document is created the prospect of future litigation was remote. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118

(7th Cir. 1983). Instead, the work product doctrine applies only when there was an "identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared." *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 525 (N.D. Cal. 1988); *see also Scruto v. Commonwealth Edison Co.*, No. 97 C 7508, 1999 WL 35311, at *2 (N.D. Ill. Jan 11, 1999) (finding that an investigation by a governmental agency presents more than a remote prospect of future litigation).

## ANALYSIS

Whether a communication is attorney-client privileged can only be determined on a communication-by-communication basis. The Government challenges Defendants' claim of privilege with respect to ninety-one communications. The Government's challenges can be divided into four categories: (1) communications that are not attorney-client privileged;[2] (2) communications that are subject to the crime-fraud exception to the attorney-client privilege;[3] (3) communications to which Defendants lack standing to assert the attorney-client privilege;[4] and (4) communications to which a former Near North executive, Jeffrey Ludwig, waived any claim

---

[2] Docs. 1-5, 7-15, 17-18, 20-21, 23-24, 26-27, 29-30, 33-36, 38-39, 42-47, 49, 51-55, 59, 61-62, 64-67, 69-72, 74-78, 84. The document number is the number assigned to the communication by Defendants in their response brief. (R. 254, Defs.' Resp.) For absolute clarity we will also provide parenthetically the page numbers of the communication in the Government's report whenever we identify a communication as unprivileged. (R. 244, Gov't's Report.)

[3] Docs. 4, 6-7, 9-19, 22-25, 27-28, 31-34, 36-43, 45-46, 48-51, 56-58, 60, 62-63, 68, 73-74, 79-83, 85-91.

[4] Docs. 5-7, 9, 11-13, 16, 20, 22-25, 28, 30-32, 36, 38, 40, 42-44, 46-47, 50-51, 54-59, 68, 75, 83.

of privilege.[5] Defendants claim that eighty-eight of these communications are either attorney-client privileged or contain attorney work product.[6] Defendants provided a specific explanation for their privilege claims, but they only responded generally to the Government's crime-fraud exception and standing arguments. Defendants withdrew their privilege claim with respect to three communications: documents 26, 61, and 76 (A170, A176; A322-A323; A419). We have reviewed each communication individually and considered every challenge raised by the Government as well as Defendants' specific and general responses.

## I. The Attorney-Client Privilege

The Government first alleges that many of the ninety-one communications do not qualify for protection under the attorney-client privilege. Recognizing that the attorney-client privilege should be strictly construed, we have striven to permit disclosure of all information that would not reveal confidential information that Defendants provided to their attorneys for the purpose of obtaining legal advice. We used a broad definition of confidential information and attempted to provide consistent, clear-cut explanations whenever we determined that a communication was not privileged in order to provide some certainty to this fact-intensive analysis. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

One challenge to our privilege analysis is that the expanded role of the corporate general counsel has blurred the line between business and legal advice. A prudent corporation will seek

---

[5] Docs. 25-26.

[6] Defendants claim that documents 1 through 3, 5, and 77 contain attorney-work product.

legal advice with respect to most corporate decisions, but the inclusion of general counsel does not transform all business discussions into attorney-client privileged communications. *Id.* Additionally, the rise of e-mail as the primary mode of corporate communication permits the broad dissemination and near-complete documentation of corporate communications. These complexities are just two of the many reasons the Court is given wide latitude when making these difficult evidentiary rulings.

We have divided these communications into distinct categories by subject matter. The first category includes communications that relate to a remediation plan, an operation plan, and corporate resolutions related to these plans.[7] We find that all of these communications are protected by the attorney-client privilege. Our review of these communications indicates that Near North disclosed confidential information to its attorneys when drafting these plans and resolutions in order to obtain legal advice pertinent to the drafting process.

The next category contains communications relating to the Illinois Department of Insurance. The following communications are not protected by the attorney-client privilege.

- Document 36 (A217) is addressed to Near North's General Counsel and three other Near North executives, but does not seek any legal advice. Segal, himself, describes the issues identified in the e-mail as related to "posturing." Image advice is not protected by the attorney-client privilege.

- Document 38 (A230): Even though it is labeled an attorney-client privileged communication, it does not contain any confidential information that Defendants provided to their attorneys. The majority of the information in the e-mail is information that the Illinois Director of Insurance provided to Near North's outside counsel. The remainder of the information in the e-mail cannot be described as confidential because the fact that Near North self-reported issues relating to its premium fund trust account is not confidential.

---

[7] Docs. 7, 9-15, 17-18, 23.

- Document 44 (A253-A257, A298-A302) consists of a fax sent by a third party to Near North and one of Near North's executive's comments regarding the fax. His comments do not seek legal advice; they concern Segal's vision for Near North.

- Document 55 (A314): Even though it is labeled an attorney-client privileged communication, it does not contain any confidential information that Defendants provided to their attorneys. It simply conveys the substance of a conversation Defendants' outside counsel had with the Illinois Director of Insurance.

The remaining communications in this category are protected by the attorney-client privilege.[8] These privileged communications relate to the drafting of various letters. The disclosure of early drafts and discussions of the editing process could reveal confidential information provided to Defendants' attorneys that was either omitted from the final letters or implicit in the editing process.

The third category relates to due diligence with respect to a loan Near North sought from AIG: documents 47, 52, 65, 69, 71, 72, and 74 (A262; A303-A305; A329-A339; A343-A345; A379-A383; A384-A414; A416-A417). None of these communications are protected by the attorney-client privilege. They do not contain any requests for legal advice nor are they responsive to a request for legal advice. Disclosure of these communications will not disclose any information Defendants communicated to their attorneys in confidence.

The final category is a hodgepodge, catch-all category. The following communications are not protected by the attorney-client privilege.

- Document 8 (A66-A68) contains a request that Near North's General Counsel, as well as three other Near North employees, review the scope of an outside audit. There is no indication that the request seeks legal advice and

---

[8] Docs. 42-43, 46, 51, 54, 59.

disclosure of this communication will not reveal any of Defendants' confidential information.

- Document 27 (A171, A175, A232-A233) discusses appointing Stanton as Near North's Corporate Secretary. These e-mails do not contain any requests for legal advice.

- Document 29 (A181): Ludwig was not seeking advice in his corporate capacity. He acknowledges that Near North's General Counsel is "unable to provide personal advice" and states that any advice she provides would not be "personal legal advice." These comments, however, indicate that he is seeking personal legal advice as they would not be included if he was seeking corporate legal advice. Additionally, the advice he seeks relates to his own personal exposure.

- Document 62 (A262) does not seek any legal advice. While Near North's General Counsel is copied on the e-mail, it is addressed to Diane Brinson, a Near North employee. The text of the message addresses Diane twice and refers to "our attorneys" as third-parties.

- Document 64 (A327-A328): Defendants expected that the revised message would be posted on Near North's intranet. The fact that General Counsel revised the article is not confidential.

- Document 70 (A346-A378) does not contain a request for legal advice, and there is no indication that the financial statements were being provided to obtain legal advice.

- Document 75 (A418) only reports a conversation that Near North's General Counsel had with a third party. Disclosure of this e-mail will not disclose any of Defendants' confidential information.

- Document 84 (A436-AA438) only contains information that was created by a third party—KPMG—and information that Defendants intended to disclose to KPMG. This e-mail string contains no information that Defendants expected would remain confidential.

- Documents 66 and 67 (A340; A341) merely report conversations with third-parties. The substance of these conversations is not confidential as to Defendants.

- Documents 45, 49, and 53 (A258-A260; A264-A267, A274-A297; A306-A308) contain executive committee meeting minutes and agendas. The

> presence of Near North's General Counsel at these executive meetings does
> not render the meeting minutes or agendas privileged.

The remaining documents in this category are protected by the attorney-client privilege as their

disclosure would reveal Defendants' confidential communications with their counsel.[9]

### A. The Crime-Fraud Exception

The Government has asserted that many of Defendants' communications were in

furtherance of the alleged fraud because they sought to: (1) appease employees and third-parties;

(2) misrepresent material facts; (3) conceal improper conduct; or (4) retaliate against whistle-

blowers.

### 1. Appeasement

The Government claims that, in furtherance of the alleged fraud, Defendants sought legal

advice in order to appease uneasy Near North employees and third parties in connection with the

following documents: (1) a remediation plan; (2) an operation plan; (3) premium trust fund

account agreements; (4) executive committee meeting agendas and minutes; and (5) a *Crain's*

article on Near North. We first address the communications relating to Near North's remediation

and operation plan.[10] The Government asserts that Defendants had no intention of actually

addressing the premium fund trust account deficit, but created these plans to appease its

employees in order to further the alleged fraud. It asserts that these plans were only window

dressing to convince Near North management and third parties that the deficit problem was being

addressed. In its evidentiary proffer however, the Government states that "members of the

---

[9] Docs. 4, 20-21, 24, 30, 33-35, 39.

[10] Docs. 6-7, 9-15, 17-19, 22-23.

management team attempted to set up a 'remediation plan' to eliminate the deficit." (R. 243-1, Gov't's Mot. at 23.) Defendants state that these communications sought legitimate legal advice and furthered Near North's recognition and compliance with Illinois regulations.

Our review of these communications provides no indications that Near North management sought legal advice with respect to these plans in furtherance of the alleged fraud. The Government even acknowledges that management believed that the purpose of the remediation plan was the elimination of the deficit. As the Government has presented no objective evidence that indicates that these plans were inherently fraudulent, we reject the Government's argument that these communications sought legal advice in furtherance of the alleged fraud. Additionally, the Government's appeasement argument necessarily assumes that the individual seeking legal advice lacked fraudulent intent because there would be no reason to appease a person possessing fraudulent intent. Finally, the fact that these e-mails may be evidence of fraud does not mean that they lose their protected status. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). The crime-fraud exception only applies when a client seeks legal advice in furtherance of a fraud or crime. *Zolin*, 491 U.S. at 563.

For the same reasons, we also conclude that the communications relating to Near North's premium trust fund account are not subject to the crime-fraud exception.[11] Finally, we need not address whether the communications addressing the executive committee meeting minutes and agendas or the *Crain's* article were efforts to appease employees in furtherance of the alleged

---

[11] Docs. 4, 16, 25, 28, 31.

fraud because we have already determined that they are not protected by the attorney-client privilege.[12]

### 2. Misrepresenting Material Facts

The Government next claims that Defendants misrepresented material facts in furtherance of the alleged fraud when they sought legal advice to: (1) locate a premium trust agreement; (2) convince the Illinois Director of Insurance that they were in compliance with Illinois regulations; (3) respond to discovery requests; and (4) satisfy due diligence obligations.

Document 24 (A156-A161), which relates to Near North's attempt to locate a premium trust agreement, is subject to the crime-fraud exception. Although the initial client communication appears to be a legitimate request for legal advice, a subsequent client communication included in this e-mail string seeks legal advice on how to obtain a premium trust agreement without admitting that Near North has not executed such an agreement. This statement supports the Government's assertion that Near North sought legal advice in furtherance of the alleged fraud. Defendants have not attempted to explain why seeking to avoid such an admission is not in furtherance of the alleged fraud. Therefore, we conclude that the crime-fraud exception applies to this communication.

Document 80 (A428)—Segal's e-mail to Stanton concerning developing a strategy to "satisfy the [Illinois Director of Insurance] as to our full compliance" with Illinois regulations—is also subject to the crime-fraud exception. Segal states that the "issue is that no one was hurt and the computer and personnel issues" and claims that they might need to send a "letter reflecting a higher level of compliance." This communication appears to be a request for

---

[12] Docs. 45, 49, 62

advice on how to convince the Illinois Director of Insurance that Near North was in compliance with the relevant Illinois regulations. Defendants have provided no explanation as to why the suggested strategy is not in furtherance of the alleged fraud; they merely claim that Segal was seeking legal advice regarding regulatory issues. Given the Government's evidentiary proffer, we find that this explanation does not satisfactorily explain why this strategy was not in furtherance of the alleged fraud. Additionally, it is inherently contradictory because it states that Near North is in "full compliance" but may send a letter "reflecting a higher level of compliance." Therefore, we conclude that the crime-fraud exception applies to this communication.

The remaining communications are not subject to the crime-fraud exception.[13] The Government contends that the communication concerning Near North's response to a discovery request is in furtherance of the alleged fraud because Segal misrepresented a material fact. This alleged misrepresentation, however, concerns statements Segal made in a deposition; the misrepresentation does not directly relate to the requested legal advice. The Government next contends that the communications concerning Near North's due diligence obligations to AIG were in furtherance of a fraud because Stanton misrepresented material facts. While these alleged misrepresentations may be evidence of fraud, they were not made in order to obtain improper legal advice. The crime-fraud exception is therefore inapplicable.

### 3. Concealing Improper Conduct

The Government claims that Defendants also concealed improper conduct in furtherance of the alleged fraud when they sought legal advice. Certain communications relating to Near

---

[13] Docs. 50, 62, 68, 74.

North's representations to the Illinois Director of Insurance are subject to the crime-fraud exception: documents 36, 37, 56, 57, and 58 (A217; A218; A315; A316-A317; A318). In the first two communications Segal and Stanton minimize problems with the premium fund trust deficit in various ways: in one communication Segal blames accounting and computer problems and in another Stanton explicitly states that she is omitting information "which may raise questions." These communications are requests for legal advice, or are responsive to such a request, on how to convince the Illinois Director of Insurance that Near North was in compliance with the relevant Illinois regulations. Defendants have provided no explanation as to why these communications were not in furtherance of the alleged fraud; they merely claim that Segal was seeking legal advice regarding regulatory issues. Once again, given the Government's evidentiary proffer, we find that these communications are not protected by the attorney-client privilege.

The other communications that concern the Illinois Director of Insurance do not include any explicit or implicit requests for improper legal advice, so they are not subject to the crime-fraud exception.[14] Additionally, the remaining communications—those regarding executive committee meeting agenda and minutes, the remediation plan, Stanton's appointment as Corporate Secretary, the scope of the attorney-client privilege, and the LaSalle bank loan—are not subject to the crime-fraud exception.[15] None of these e-mails contain requests for improper legal advice. The fact that they might be evidence of fraud is not sufficient to undermine Defendants' attorney-client privilege.

---

[14] Docs. 38, 40, 42-43, 46, 51.

[15] Docs. 27-28, 32, 39, 45, 50, 60.

#### 4. Retaliation Against Whistle-Blowers

Finally, the Government claims that Defendants sought legal advice in order to retaliate against several whistle-blowers—Jeffrey Ludwig, Tom McNichols, Michael Mann, Shel Bachrach, and Matt Walsh—in furtherance of the alleged fraud.[16] They also claim that Defendants retaliated against these whistle-blowers when they filed a complaint against Aon, a competitor, for disseminating information about Near North.[17] Defendants claim that they were only seeking to protect Near North's contractual rights and to provide redress for injuries Near North suffered as a result of contractual breaches by former employees and tortious conduct by competitors. None of these communications contain any evidence that Defendants sought legal advice in order to retaliate against these individuals. Accordingly, we find that Defendants have satisfactorily explained why they sought legal advice and conclude that the crime-fraud exception is not applicable to these communications.

### B. Standing

The Government next argues that Defendants lack standing to assert a privilege claim with respect to many communications because Defendants sought legal advice for the benefit of the trust beneficiaries. *See Mett*, 178 F.3d at 1064 (stating that this standing doctrine only applies when a trustee "seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity"); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970) (stating that "the availability of the privilege [must] be subject to the right of the stockholders to show cause why it should not be invoked in the

---

[16] Docs. 33-34, 41, 48, 50, 63, 86-87, 90.

[17] Docs. 73, 79, 81-83, 85, 88-89, 91.

particular instance"); *Comegys v. Glassell*, 839 F. Supp. 447, 448-49 (E.D. Tex. 1993) (stating that "no independent attorney-client privilege exists between a trustee and its attorney to the exclusion of the beneficiaries when the alleged privileged documents relate to the administration of the trust or the trusts' [sic] res" because "[t]he policy of preserving the full disclosure necessary in the trustee-beneficiary relationship is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust").

After reviewing all of the communications that the Government claims are not privileged because of this standing doctrine, we conclude this doctrine does not apply to any of these communications. Defendants were not acting solely as trustees. While part of Near North's business requires the maintenance of a trust account, the challenged communications cannot be described as requests for advice solely on matters of plan administration. The legal advice requested in these communications did not relate only to plan administration, so these communications implicated Defendants in more than just their capacities as trustees.

### C. Waiver by Former Near North Executive

The Government contends that two communications, documents 25 and 26, are not privileged because Jeffrey Ludwig, a former Near North executive, waived Defendants' privilege claim when he testified about the subject matter of these communications before the grand jury. Defendants withdrew their claim of privilege with respect to document 26, so we only need to determine whether Ludwig waived Defendants' privilege with respect to document 25. We conclude that Ludwig did not waive Defendants' privilege because former executives cannot waive a corporation's attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985); *Allen v. Burns Fry, Ltd.*, No. 83 C 2915, 1987 WL 12199,

15

at *3 (N.D. Ill. June 8, 1987) ("A manager's power to waive the privilege terminates when he leaves his job.").

## II. The Work Product Doctrine

Defendants assert that five communications are protected by the attorney work product doctrine. Four of these communications contain legal opinions that Near North's General Counsel e-mailed to herself from Lexis-Nexis.[18] The search terms used to gather these cases does provide a window into the attorney's thinking, so these communications would be protected if they were created in anticipation of litigation. While the fact that litigation ultimately ensued does not establish that these searches were performed in anticipation of litigation, we conclude that these documents were obtained in anticipation of litigation. The search terms closely relate to the subject matter of the present litigation and indicate that Near North's General Counsel was researching the claims at the heart of the present litigation. Even though the searches were performed before the first indictment was issued, we conclude that they were prepared in anticipation of litigation.

The fifth communication, document 77, is not attorney work product because there is no indication that it was prepared in anticipation of litigation. The fact that the research could be useful in defending future claims does not mean it was created in anticipation of litigation. This communication, however, is attorney-client privileged. Disclosure of this communication would reveal Defendants' request for legal advice.

---

[18] Docs. 1-3, 5.

16

## CONCLUSION

For the reasons provided above, we partially grant and partially deny the Government's motion *in limine* requesting a ruling on whether ninety-one communications are protected by the attorney-client privilege. (R. 243-1.) We conclude that the following communications are not protected: documents 8, 24, 26-27, 29, 36-38, 44-45, 47, 49, 52-53, 55-58, 61-62, 64-67, 69-72, 74-76, 80, and 84. We have also attached a table summarizing our conclusions. The Government's taint team may immediately provide these communications to the prosecution team.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: April 15, 2004**

| Document Number | Document Pages | The Court's Determination |
|:---:|:---:|:---:|
| 1 | A1-A22 | ATTORNEY WORK PRODUCT |
| 2 | A23-A26 | ATTORNEY WORK PRODUCT |
| 3 | A27-A31 | ATTORNEY WORK PRODUCT |
| 4 | A32 | PRIVILEGED |
| 5 | A33-A61 | ATTORNEY WORK PRODUCT |
| 6 | A62-A63 | PRIVILEGED |
| 7 | A64-A65 | PRIVILEGED |
| **8** | **A66-A68** | **NOT PRIVILEGED** |
| 9 | A69-A83 | PRIVILEGED |
| 10 | A84-A99 | PRIVILEGED |
| 11 | A100 | PRIVILEGED |
| 12 | A101-A105 | PRIVILEGED |
| 13 | A106-A114 | PRIVILEGED |
| 14 | A115-A118 | PRIVILEGED |
| 15 | A119-A123 | PRIVILEGED |
| 16 | A124 | PRIVILEGED |
| 17 | A125-A129 | PRIVILEGED |
| 18 | A130-A135 | PRIVILEGED |
| 19 | A136-A141 | PRIVILEGED |
| 20 | A142 | PRIVILEGED |
| 21 | A143 | PRIVILEGED |
| 22 | A144-A149 | PRIVILEGED |
| 23 | A150-A155 | PRIVILEGED |
| **24** | **A156-A161** | **NOT PRIVILEGED CRIME-FRAUD EXCEPTION** |
| 25 | A162-A169 | PRIVILEGED |
| **26** | **A170, A176** | **NOT PRIVILEGED** |

| Document Number | Document Pages | The Court's Determination |
|:---:|:---:|:---:|
| **27** | **A171, A175, A232-A233** | **NOT PRIVILEGED** |
| 28 | A172-A180, A184-A185 | PRIVILEGED |
| **29** | **A181** | **NOT PRIVILEGED** |
| 30 | A182-A183 | PRIVILEGED |
| 31 | A186-A196, A206-A216, A219-A229 | PRIVILEGED |
| 32 | A197-A199 | PRIVILEGED |
| 33 | A200 | PRIVILEGED |
| 34 | A201 | PRIVILEGED |
| 35 | A202 | PRIVILEGED |
| **36** | **A217** | **NOT PRIVILEGED CRIME-FRAUD EXCEPTION** |
| **37** | **A218** | **NOT PRIVILEGED CRIME-FRAUD EXCEPTION** |
| **38** | **A230** | **NOT PRIVILEGED** |
| 39 | A231 | PRIVILEGED |
| 40 | A234-A235 | PRIVILEGED |
| 41 | A236 | PRIVILEGED |
| 42 | A237-A239 | PRIVILEGED |
| 43 | A240-A252 | PRIVILEGED |
| **44** | **A253-A257, A298-A302** | **NOT PRIVILEGED** |
| **45** | **A258-A260** | **NOT PRIVILEGED** |
| 46 | A261 | PRIVILEGED |
| **47** | **A262** | **NOT PRIVILEGED** |
| 48 | A263, A268-A270 | PRIVILEGED |
| **49** | **A264-A267, A274-A297** | **NOT PRIVILEGED** |
| 50 | A271, A273 | PRIVILEGED |
| 51 | A272 | PRIVILEGED |

| Document Number | Document Pages | The Court's Determination |
|---|---|---|
| 52 | A303-A305 | NOT PRIVILEGED |
| 53 | A306-A308 | NOT PRIVILEGED |
| 54 | A309-A313 | PRIVILEGED |
| 55 | A314 | NOT PRIVILEGED |
| 56 | A315 | NOT PRIVILEGED CRIME-FRAUD EXCEPTION |
| 57 | A316-A317 | NOT PRIVILEGED CRIME-FRAUD EXCEPTION |
| 58 | A318 | NOT PRIVILEGED CRIME-FRAUD EXCEPTION |
| 59 | A319 | PRIVILEGED |
| 60 | A320-A321 | PRIVILEGED |
| 61 | A322-A323 | NOT PRIVILEGED |
| 62 | A324 | NOT PRIVILEGED |
| 63 | A325-A326 | PRIVILEGED |
| 64 | A327-A328 | NOT PRIVILEGED |
| 65 | A329-A339 | NOT PRIVILEGED |
| 66 | A340 | NOT PRIVILEGED |
| 67 | A341 | NOT PRIVILEGED |
| 68 | A342 | PRIVILEGED |
| 69 | A343-A345 | NOT PRIVILEGED |
| 70 | A346-A378 | NOT PRIVILEGED |
| 71 | A379-A383 | NOT PRIVILEGED |
| 72 | A384-A414 | NOT PRIVILEGED |
| 73 | A415 | PRIVILEGED |
| 74 | A416-A417 | NOT PRIVILEGED |
| 75 | A418 | NOT PRIVILEGED |
| 76 | A419 | NOT PRIVILEGED |

| Document Number | Document Pages | The Court's Determination |
|---|---|---|
| 77 | A420-A423 | PRIVILEGED |
| 78 | A424-A425 | PRIVILEGED |
| 79 | A426-A427 | PRIVILEGED |
| **80** | **A428** | **NOT PRIVILEGED**<br>**CRIME-FRAUD EXCEPTION** |
| 81 | A429 | PRIVILEGED |
| 82 | A430 | PRIVILEGED |
| 83 | A431-A435 | PRIVILEGED |
| **84** | **A436-A438** | **NOT PRIVILEGED** |
| 85 | A439 | PRIVILEGED |
| 86 | A440-A442 | PRIVILEGED |
| 87 | A443 | PRIVILEGED |
| 88 | A444 | PRIVILEGED |
| 89 | A445 | PRIVILEGED |
| 90 | A446 | PRIVILEGED |
| 91 | A447 | PRIVILEGED |