Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 - 1 and 3 | **DATE** | 10/6/2004 |
| **CASE TITLE** | USA vs. Segal and Near North Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court hereby modifies the Preliminary Forfeiture Order by excluding the following companies from the enterprise: North Son, Inc., International Film Guarantors, Settlement Planning Associates, Fine Arts Risk Management, Near North National Exchange Co., Prime Source Financial Corp., and Home Warranty of America, LLC. Otherwise the Court affirms the Preliminary Forfeiture Order. The Government is directed to publish notice of the forfeiture order as required by 18 U.S.C. Section 1963(1)(1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 07 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 468 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| RO | courtroom deputy's initials | 2004 OCT -6 PM 4:10 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 02-CR-112 |
| | ) | |
| MICHAEL SEGAL and NEAR NORTH | ) | Judge Ruben Castillo |
| INSURANCE BROKERAGE, INC. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

A jury found Defendant Michael Segal guilty of violating the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-68. The jury also found that, pursuant to 18 U.S.C. §§ 1963(a)(1) and (3), Segal must forfeit $30 million in racketeering proceeds and interests and that, pursuant to 18 U.S.C. § 1963(a)(2), 60% of his interest in Near North Insurance Brokerage ("NNIB") or Near North National Group ("NNNG") (collectively "the enterprise") was criminally tainted and, therefore, subject to forfeiture. This Court then entered a Preliminary Forfeiture Order ("PFO") requiring Segal to forfeit his entire interest in the enterprise and $30 million in racketeering proceeds and interests.

Segal objects to the PFO. (R. 353-1, Def.'s Objections.) After reviewing Segal's numerous objections, we modify the PFO in the following way. We exclude the following seven companies from the enterprise: (1) North Son, Inc.; (2) International Film Guarantors; (3) Settlement Planning Associates; (4) Fine Arts Risk Management; (5) Near North National Exchange Company; (6) Prime Source Financial Corporation; and (7) Home Warranty of America, LLC. We otherwise affirm the PFO. We will enter a final forfeiture order once we complete all necessary ancillary third-party proceedings.

408

## ANALYSIS

### I. Forfeiture of Segal's Interest in the Enterprise

Segal objects to the forfeiture of his entire interest in the enterprise. He claims that the PFO exceeds the jury's verdict and therefore violates the Fifth Amendment's due process and double jeopardy clauses and his Sixth Amendment right to a jury trial. He also claims that it violates the Eighth Amendment's prohibition on excessive fines. Before we can address his constitutional objections, we must determine whether, as Segal alleges, the jury found that 60% of his interest in the enterprise was subject to forfeiture.

#### A. The Jury's Verdict

The forfeiture verdict form had five questions. (R. 341, Forfeiture Verdict Form.) The first three questions addressed Segal's racketeering proceeds and interests, and the final two questions—(d) and (e)—addressed Segal's interest in the enterprise. (*Id.*) Question (d), seeking a yes or no answer, was:

> We, the jury, find that MICHAEL SEGAL held an interest in, security of, claim against, or property affording a source of influence over an enterprise that defendant SEGAL operated, controlled, conducted, and participated in the conduct of, in violation of 18 U.S.C. § 1962(c).

(*Id.*) The jury answered "Yes." By statutory mandate, this answer subjects Segal's entire interest in the enterprise to forfeiture regardless of the extent to which the enterprise was tainted by criminal activity. RICO's enterprise forfeiture provision, 18 U.S.C. § 1963(a)(2), states that:

> Whoever violates any provision of section 1962 . . . *shall forfeit to the United States* . . . any--interest in; security of; claim against; or property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962 . . . .

18 U.S.C. § 1963(a)(2) (emphasis added and internal numbering omitted).[1] The Eighth Amendment, as discussed below, is the only constitutional provision that can limit the application of RICO's enterprise forfeiture provision. *See Busher*, 817 F.2d at 1413; *Sarbello*, 985 F.2d at 724.

Question (e), which was used over the Government's objection, is the source of this dispute over the meaning of the jury's verdict. It stated:

> If the answer to subparagraph (d) above is "Yes," please write the percentage of defendant SEGAL's interest in NNIB or NNNG that were tainted by criminal activity in violation of 18 U.S.C. § 1962, and are, therefore, subject to forfeiture.

(R. 341, Forfeiture Verdict Form.) The final clause of this question, "and are, therefore, subject to forfeiture" is legally incorrect because, as stated above, RICO's enterprise forfeiture provision requires a defendant to forfeit his *entire* interest in the enterprise *regardless* of the extent to which the enterprise is tainted by criminal activity.[2]

---

[1] *United States v. Sarbello*, 985 F.2d 716, 722 (3rd Cir. 1993) ("The courts now appear to be uniform that on its face § 1963(a)(2) mandates forfeiture of the defendant's *entire* interest in the RICO enterprise itself, and does not contemplate mitigation of that part of the sentence, notwithstanding its context within the entire sentence, and its relation to the criminal conduct.") (emphasis in original); *United States v. Angiulo*, 897 F.2d 1169, 1211 (1st Cir. 1990) ("Any interests *in* an enterprise, including the enterprise itself, are subject to forfeiture in their entirety, regardless of whether some portion of the enterprise is not tainted by the racketeering activity.") (emphasis in original); *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir. 1987) ("[F]orfeiture is not limited to those assets of a RICO enterprise that are tainted by use in connection with racketeering activity, but rather extends to the convicted person's entire interest in the enterprise."); *United States v. Anderson*, 782 F.2d 908, 917-18 (11th Cir. 1986) ("A defendant's conviction under the RICO statute subjects *all* his interests in the enterprise to forfeiture 'regardless of whether those assets were themselves "tainted" by use in connection with the racketeering activity.'") (emphasis in original) (quoting *United States v. Cauble*, 706 F.2d 1322, 1349 (5th Cir. 1983)).

[2] We also incorrectly instructed the jury that Segal's "interest in the enterprise is subject to forfeiture to the extent the enterprise is tainted by racketeering activity." (R. 339, Forfeiture Jury Instructions at 7.)

3

The parties have two distinct interpretations of question (e). Segal asserts that the jury found that 60% of his interest was subject to forfeiture, while the Government asserts that the jury advised the Court whether the application of RICO's enterprise forfeiture provision would violate the Eighth Amendment's prohibition on excessive fines. While we are hesitant to base such an important decision on the rules of grammar, our analysis must focus on the actual language of the forfeiture verdict form. In this Court's view, question (e) only asked the jury to "write the percentage of defendant SEGAL's interest in NNIB or NNNG that were tainted by criminal activity in violation of 18 U.S.C. § 1962 . . . ." The final clause—"and, are therefore, subject to forfeiture"—did not ask the jury to find an additional fact. Instead it explained the result (according to our erroneous instruction) of the jury's criminal-taint finding. The inclusion of the word "therefore" and the comma between "18 U.S.C. § 1962" and the word "and" indicate that forfeiture is the immediate and direct consequence of the jury's criminal-taint finding. The question's structure limits it and the jury's factual finding to the percentage of Segal's interest that was criminally tainted. Accordingly, the jury simply found that 60% of Segal's interest in the enterprise was criminally tainted; it did not legally find that only 60% of Segal's interest in the enterprise was subject to forfeiture. Therefore, the jury's verdict does not limit the percentage of Segal's interest that is subject to forfeiture.[3]

---

[3] Because the jury did not find that 60% of Segal's interest was subject to forfeiture, forfeiture of his entire interest in the enterprise does not re-litigate a fact that has already been determined in violation of the double jeopardy clause. *See Ashe v. Swenson*, 397 U.S. 436, 445 (1970). Nor does the forfeiture of Segal's entire interest deprive him of his jury-trial right because "the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." *United States v. Libretti*, 516 U.S. 29, 49 (1995); *see also United States v. Messino*, 382 F.3d 704 (7th Cir. 2004) (stating that neither *Blakely v. Washington*, 124 S. Ct. 2531 (2004), nor *Apprendi v. New Jersey*, 530 U.S. 466 (2000), apply to criminal forfeiture

Segal posits that the jury's verdict, rather than being a "'pure' determination of fact," might represent a mixed question of fact and law. (R. 388, Def.'s Reply at 5.) We cannot speculate as to what the jury was thinking when it answered question (e) because we must assume that it followed this Court's instruction and answered the specific question on the forfeiture verdict form. *See United States v. Bell*, 980 F.2d 1095, 1098 (7th Cir. 1992). We acknowledge that question (e) could be loosely interpreted to have asked the jury to make a legal determination as to the percentage of Segal's interest that is subject to forfeiture. Yet the very first jury instruction provided:

> You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them.

(R. 331, Jury Instructions at 2.) The jury is not empowered to decide legal questions, such as how much of Segal's interest in the enterprise is subject to forfeiture. More importantly, Congress answered this legal question when it enacted RICO by mandating that a racketeer forfeit his entire interest in the enterprise. We cannot accept a grammatically-incorrect interpretation that would undermine Congress's "express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (quoting Pub. L. 91-452, § 904(a), 84 Stat. 947).

We are also unpersuaded that this one inaccurate jury instruction (including the final clause of question (e)) automatically invalidates the jury's verdict. An inaccurate jury instruction is harmless unless it appears beyond a reasonable doubt that it contributed to the verdict. *See*

---

proceedings). Yet the Court expressly notes that this determination may be binding as to the issue of loss caused by Segal's conduct for purposes of sentencing.

5

*Neder v. United States*, 527 U.S. 1, 15-16 (1999). The jury's answer to question (d), which is unaffected by our instruction, requires the forfeiture of Segal's entire interest in the enterprise. We are convinced beyond a reasonable doubt that the jury's answer to question (d) was unaffected by our instruction. Because we must assume that the jury followed our instructions and answered the actual question on the verdict form, we are also convinced that the jury's answer to question (e) was unaffected by the one partially misleading instruction. Finally, Segal has not asserted that he was prejudiced, nor can we conceive of how he could have been prejudiced, by the inaccurate instruction. *See United States v. Fiedeke*, __ F.3d __ (7th Cir. 2004) (stating that problems with jury instructions will only disturb a criminal conviction if the defendant was prejudiced).

### B. Eighth Amendment Gross Disproportionality Analysis

The Eighth Amendment prohibits this Court from imposing an excessive criminal forfeiture order. *Alexander v. United States*, 509 U.S. 544, 558-59 (1993). A criminal forfeiture order is unconstitutionally excessive if it is "grossly disproportionate to the gravity of the offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Even though RICO's enterprise forfeiture provision mandates that a defendant forfeit his entire interest in the enterprise regardless of the percentage of the enterprise that was tainted by criminal activity, this Court has a "constitutional responsibility to [e]nsure that the forfeiture does not inflict excessive punishment." *United States v. Vriner*, 921 F.2d 710, 712 (7th Cir. 1991). Therefore, this Court must determine whether the application of RICO's forfeiture provision in this case violates the Eighth Amendment.[4]

---

[4] The Third Circuit in *Sarbello* and the Ninth Circuit in *Busher* only require an Eighth Amendment gross disproportionality analysis if the defendant presents *prima facie* evidence that

6

To determine the gravity of Segal's offense we consider: (1) the nature of his offense; (2) the circumstances surrounding it, including any other illegal activity; (3) the magnitude and type of harm it caused; (4) the defendant's motive; (5) the benefits he obtained; (6) the extent to which his interest is tainted by criminal activity; and (7) other available or relevant penalties.[5] *See Towers v. City of Chi.*, 173 F.3d 619, 625 (7th Cir. 1999); *Vriner*, 921 F.2d at 713, n. 5 (citing *Busher*, 817 F.2d at 1415); *Sarbello*, 985 F.2d at 724. Segal was convicted of running a criminal enterprise: an exceedingly serious offense as evidenced by RICO's expansive forfeiture provision. *See United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985). The duration of the criminal enterprise and the number of predicate acts (fifteen) also indicate that his offense was serious. Segal's racketeering is indirectly connected to many additional crimes: insurance fraud, embezzlement, and tax fraud. In this way, Segal exemplifies the criminal for which the RICO statute was "principally designed." *See Bajakajian*, 524 U.S. at 338.

Segal has repeatedly soft-pedaled the harm caused by his fraudulent scheme by asserting that it only created an unrealized risk of loss. (R. 353, Def.'s Objections at 10.) Yet the

---

the forfeiture order is grossly disproportionate. *Sarbello*, 985 F.2d at 724; *Busher*, 817 F.2d at 1413. Given the Seventh Circuit's unequivocal statement in *Vriner*, we will conduct the Eighth Amendment analysis despite the fact that Segal has not presented *prima facie* evidence of gross disproportionality. The percentage of criminal taint in *Sarbello* and *Busher* was approximately 10%. *Sarbello*, 985 F.2d at 724; *Busher*, 817 F.2d at 1415. The Ninth Circuit in *Busher* did not specify the exact percentage of the defendant's interest that was tainted by criminal activity, but stated that the defendant claimed that only 2 of the enterprise's 14 contracts were criminally-tainted and that the total dollar amount of the fraudulent conduct was $335,000 while the value of the enterprise, in which the defendant had a 92% interest, was approximately $3 million. *Id.* These defendants' entire interests were ten times greater than their criminally-tainted interests while Segal's entire interest is not even twice as great as his criminally-tainted interest. Thus, the jury's verdict is not *prima facie* evidence of gross disproportionality.

[5] Neither party provided this Court with any guidance with respect to the final factor: other relevant or available penalties. Our analysis is limited to the other factors.

7

magnitude of this unrealized risk of loss counsels against treating it differently than an actual loss. Segal's punishment should not be mitigated because he was able to prevent the realization of a risk of loss that he deliberately created through fraud. Segal also asserts that he obtained no direct benefit and little indirect benefit from his offense. (*Id.*) The jury's verdict that he obtained $30 million in racketeering proceeds, and the trial evidence on which the verdict was based, directly contradicts this claim. It is beyond dispute that Segal continually reaped immense economic benefits from his fraudulent conduct. The evidence showed that Segal used special fiduciary funds as his personal, unlimited bank account.

Segal's offense was exceedingly serious, so justice requires a serious punishment. He deliberately used money that others had entrusted to him to finance a criminal enterprise. He reaped significant personal benefits while simultaneously exposing others to substantial risks. Full forfeiture is a severe punishment, but it is a punishment that Congress decided was appropriate. *See Bajakajian*, 524 U.S. at 336 (stating that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature"). Thus, the application of RICO's enterprise forfeiture provision in this case does not violate the Eighth Amendment.

### C. The Scope of the Enterprise

Segal also asserts that the scope of the enterprise charged in the indictment was much broader than the scope of the enterprise proven at trial. The Fourth Superseding Indictment alleged that the enterprise consisted of NNIB, NNNG, and twenty-three related companies. (R. 227, Fourth Superseding Indictment at 28.) While NNNG is the parent holding company consisting of NNIB and the related companies, the indictment alleges that the enterprise is an association-in-fact. (*Id.*) Thus, to prove the enterprise charged in the indictment, the

8

Government had to prove that NNIB and all twenty-three related companies were "integral part[s] of [Segal's] fraudulent scheme."[6] *See Porcelli*, 865 F.2d at 1364.

Segal asserts that the trial evidence did not establish that seven of the related companies were part of the enterprise: (1) North Son, Inc.; (2) International Film Guarantors; (3) Settlement Planning Associates; (4) Fine Arts Risk Management; (5) Near North National Exchange Company; (6) Prime Source Financial Corporation; and (7) Home Warranty of America, LLC.[7] Segal asserts that there was no or minimal evidence connecting these companies to his fraudulent scheme. The Government asserts that these companies were part of the enterprise because "the entire enterprise was operated on a consolidated basis, the tax treatment was consolidated, and the revenues and assets of each part of the enterprise were available at the whim of [Segal] to support operations of the enterprise as a whole." (Gov't's Response at 7.)

The Government is painting with too broad a brush. Its argument permits an association-in-fact enterprise, like the one alleged in the Fourth Superceding Indictment, to consist of entities that are connected to each other by nothing more than common ownership. Common ownership does not create a RICO enterprise. *See Porcelli*, 865 F.2d at 1363. As the Government does not

---

[6] The Seventh Circuit stated in *United States v. Horak*, 833 F.2d 1235, 1251 (7th Cir. 1987), that "prosecutorial caprice in the choice of the enterprise" could implicate the Eighth Amendment. The court did not develop this argument, but merely made this statement while explaining the inappropriateness of granting a writ of mandamus. We find that Segal's challenge to the scope of the alleged enterprise is a variance claim attacking the sufficiency of the evidence underlying the jury's verdict. *See United States v. Porcelli*, 865 F.2d 1352, 1364 (2d Cir. 1989).

[7] He also asserts that three additional companies should be excluded because the evidence showed that they were always profitable and "made distributions and advances to NNIB that improved NNIB's PFTA balance and working capital." (R. 353, Def.'s Objections at 9.) Rather than establishing that these profitable companies were outside of the enterprise, this evidence establishes that they were integral parts of Segal's fraudulent scheme because they permitted him to conceal his abuse of NNIB's PFTA.

9

challenge Segal's assertion that there was a paucity of evidence connecting these seven companies to Segal's fraudulent scheme, we find that the Government did not prove that these companies were part of the enterprise.[8] Accordingly, we modify the PFO to exclude them from the enterprise. Segal's interest in these companies is not forfeit pursuant to RICO's enterprise forfeiture provision.

### D. Date of Forfeiture

Segal also asserts that the PFO erroneously declares that his interest is forfeit "as of January 1995." (R. 388, Def.'s Reply at 7.) Even though he raised this argument for the first time in his reply, we will address it to ensure that the PFO is correct in all respects. Segal's interest, pursuant to 18 U.S.C. § 1963(c), is forfeit to the United States "upon commission of the act giving rise to forfeiture . . . ." The question before this Court is when Segal committed the "act giving rise to forfeiture."

Segal asserts that he did not commit the "act giving rise to forfeiture" until February 2001, the date of his last predicate racketeering act. He claims that "it is impossible to know that the jury found a completed RICO violation justifying forfeiture prior to the *last* act of racketeering activity alleged in the indictment." (R. 388, Def.'s Reply at 7 (emphasis in original).) Regardless of the number of racketeering predicate acts the jury may have needed to find a pattern of racketeering activity, the "act giving rise to forfeiture" occurred when the racketeer committed the second predicate act. Segal's interpretation would significantly undermine the purpose of RICO's relation-back provision, 18 U.S.C. § 1963(c); is inconsistent

---

[8] The variance between the charged enterprise and the enterprise proven at trial does not undermine Segal's conviction because it did not prejudice him. His defense to the overly-broad enterprise "necessarily included" his defense to the enterprise proven at trial. *Id.* at 1364.

10

with Congress's "express admonition" that RICO should be broadly construed to serve its remedial purposes, *see Sedima*, 473 U.S. at 497; and would deter the Government from including additional predicate acts in future indictments.

Segal asserts, in the alternative, that he did not commit the "act giving rise to forfeiture" until the first quarter of 1996, the date of the last sub-act of his second predicate act. The jury only had to find that Segal committed one of the sub-acts comprising each predicate act. (R. 331, Jury Instructions at 68; R. 227, Fourth Superseding Indictment at 31.) The jury found that Segal committed all of the sub-acts of the second predicate act, one of which occurred "in or about January 1995." (R. 333, Def.'s Verdict; R. 227, Fourth Superseding Indictment at 31.) The PFO thus forfeits Segal's interest in the enterprise at the appropriate time.

## II. Forfeiture of $30 Million of Racketeering Proceeds

Segal objects on multiple grounds to the forfeiture of $30 million in racketeering proceeds.[9] First, Segal claims that the indictment failed to provide him with adequate notice that $30 million was subject to forfeiture. Even if the indictment provided him with notice of the amount of property subject to forfeiture, he claims that the indictment did not provide him with notice of the type of property that the jury found is subject to forfeiture. Beyond the indictment, Segal claims that he did not receive $30 million in racketeering proceeds. Even if he did, Segal asserts that no proceeds remain to be forfeited. And finally, even if he has retained some of his proceeds, he asserts that the PFO must be reduced by the value of his interest in the enterprise.

---

[9] For the sake of simplicity, throughout this section we refer to Segal's racketeering proceeds and interests simply as his racketeering proceeds. In this case, his forfeited interests under § 1963(a)(1) are the same as his forfeited proceeds under § 1963(a)(3).

11

We first address Segal's objections that challenge the indictment before addressing his arguments that challenge the evidence.

### A. The Sufficiency of the Indictment

The Fourth Superseding Indictment notified Segal that the Government would seek the forfeiture of property and identified the property subject to forfeiture as:

> at least $20,000,000, including but not limited to all salary, bonuses, dividends, pension and profit sharing benefits received by defendant Michael Segal from NNIB and NNNG acquired and maintained during the period 1990 through 2001.

(R. 227, Fourth Superseding Indictment at 63-64.) Segal complains about the inclusion of the term "at least" in the indictment, but does not assert that the use of this open-ended term rendered the indictment defective.[10] (R. 388, Def.'s Reply at 7.) Instead, he asserts that an indictment seeking "at least" $20 million cannot support the forfeiture of $30 million. (R. 388, Def.'s Reply at 7.) Rather than posit how much deviation from the indictment's baseline of $20 million is permitted, Segal bluntly asserts that "the indictment in this case cannot support forfeiture in an amount greater than $20 million." (R. 388, Def.'s Reply at 8.)

We find that Segal waived his objection to the inclusion of the term "at least." The relief he requests—that this Court limit the proceeds subject to forfeiture to $20 million—indicates that Segal is challenging any forfeiture verdict in excess of the indictment's baseline. Additionally, this Court is exceedingly reluctant to determine how much a jury's verdict can exceed an indictment's baseline forfeiture. It is far preferable for a defendant to seek clarification before

---

[10] If he had made a defect argument, we would find it waived because Segal did not raise the defect in any of his multiple motions to dismiss or in either of his motions for bills of particulars. *See* Fed. R. Crim. P. 12(b)(3)(B); *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 944 (N.D. Ill. 2001); *United States v. Best*, 657 F. Supp. 1179, 1182 (N.D. Ill. 1987).

trial than for a court to determine after trial whether the jury's verdict was so excessive that the indictment failed to provide adequate notice.

Segal also asserts that the indictment failed to notify him of the type of property that would be subject to forfeiture. The indictment notified him that "at least $20,000,000, including but not limited to all salary, bonuses, dividends, pension and profit sharing benefits" were subject to forfeiture. (R. 227, Fourth Superseding Indictment at 64.) Under the legal maxim of *ejusdem generis*, the phrase "including but not limited to" only expands the property subject to forfeiture to other types of executive compensation. *See, e.g., Ortloff v. United States*, 335 F.3d 652, 658 (7th Cir. 2003). He asserts that the jury forfeited property that was not identified in the indictment: racketeering proceeds received by NNIB and used for a business purpose. (R. 388, Def.'s Reply at 16.) In order to determine whether the property the jury found subject to forfeiture is different from the property the indictment alleged was subject to forfeiture, we must consider whether the jury's verdict was supported by the evidence presented at trial. *See United States v. Messino*, 382 F.3d 704 (7th Cir. 2004) (stating that variance claims are treated as claims attacking the sufficiency of the evidence).

### B. The Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence, we will affirm the jury's verdict if it is supported by some evidence, taking all inferences in the light most favorable to the Government. *United States v. Diamond*, 378 F.3d 720, 727 (7th Cir. 2004) ("We reverse only when the record contains no evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt."). The Government presented ample evidence about Segal's executive compensation: cash, salary, bonuses, personal services, the payment of

13

property and income taxes, the payment of credit card debt, and the maintenance of personal residences. The jury was presented with enough evidence about Segal's executive compensation to be able to conclude, taking all inferences in the light most favorable to the Government, that Segal received at least $30 million in racketeering proceeds in the form of executive compensation.[11]

Segal nonetheless requests that we go behind the jury's verdict to determine how the jurors decided that he must forfeit $30 million in racketeering proceeds. Segal assumes that the $30 million forfeiture verdict represents the PFTA deficit.[12] His assumption may be correct, but it is not the role of this Court to divine the jury's reasoning, especially when the jury did not rubber stamp the Government's $35 million forfeiture request.[13] "[J]urors are not required to explain their reasoning, [] their deliberations are confidential, and [] their lack of legal training and experience makes it difficult for a judge to think his way into their minds." *Needham v.*

---

[11] We instructed the jury that it must determine the property that is subject to forfeiture beyond a reasonable doubt. Subsequent to Segal's trial, the Seventh Circuit clarified that a jury may use the preponderance of the evidence standard when deciding forfeiture issues. *United States v. Messino*, — F.3d — (7th Cir. 2004). The jury's forfeiture verdict was supported by the evidence under either standard.

[12] Segal also claims that a rational jury could not have concluded that the PFTA deficit was $30 million. It is not the role of this court to weigh the evidence or to make credibility determinations. *United States v. Brown*, 328 F.3d 352, 355 (7th Cir. 2003). Our only job is to determine whether a $30 million PFTA deficit calculation was supported by the evidence when we consider all of the evidence and draw all reasonable inferences in the light most favorable to the Government. There was ample evidence that the PFTA deficit was $30 million. The Hales Group, Tom McNichols, and Sandy Prescott all testified to that effect. We need not go any further.

[13] While deliberating, the jury asked the Court whether it could exceed the Government's $35 million forfeiture request. This request, together with the jury's actual forfeiture verdict, indicates that the jury rejected the Government's forfeiture formulation and counsels against attempting to divine the jury's reasoning.

14

*White Labs., Inc.*, 847 F.2d 355, 360 (7th Cir. 1988). Because we can only speculate as to why and how the jury reached its verdict, the role of this Court is appropriately limited to determining whether the jury's verdict is supported by the evidence. We have already determined that it is.

We would nonetheless affirm the jury's verdict even if we were to assume that it is based on the PFTA deficit. The evidence demonstrated that Segal abused the PFTA to operate NNIB and expand NNNG. Moreover, the evidence showed that but for his fraud NNIB and many of the related companies would not have been going concerns. Thus, all of Segal's executive compensation from the moment the PFTA went into deficit are racketeering proceeds. While Segal wants the Government to trace each dollar fraudulently withdrawn from the PFTA account into Segal's personal bank account, Segal's lackluster accounting system, which was a deliberate attempt to conceal his fraudulent conduct, precluded such a detailed accounting. The PFTA deficit represents the amount of money that Segal would have had to invest (or legally borrow) in order to legally operate NNIB and expand NNNG. Thus, his fraud enriched him by an amount at least equivalent to the PFTA deficit. Accordingly, the jury's verdict is supported by the evidence, even if we assume that it represents the PFTA deficit.

Application of the appropriate standard of review negates most of Segal's remaining objections to the jury's forfeiture verdict. First, his argument that the jury forfeited proceeds received by NNIB and used for business purposes requires this Court to examine the jury's reasoning. Second, his multiple arguments that he never actually obtained any racketeering proceeds also requires this Court to examine the jury's reasoning.[14] Third, his argument that his

---

[14] Segal also tries to circumvent the statutory language of § 1963(a)(3) by hiding behind the corporate form. Section 1963(a)(3) requires the forfeiture of racketeering proceeds received indirectly. Even if NNIB's corporate status precludes the full application of RICO's forfeiture provisions, we would find that the evidence of Segal's misconduct fully justifies piercing the

15

racketeering proceeds should be reduced by the value of his interest in the enterprise assumes that his racketeering proceeds remained in NNIB, which once again requires this Court to determine how the jury found $30 million subject to forfeiture. Finally, his argument that we failed to deduct the costs of the criminal business as required by *United States v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003), is misplaced because his executive compensation is, by definition, net of expenses.

The only remaining argument that needs to be addressed is Segal's argument that he no longer possesses his racketeering proceeds. Yet "a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account." *Ginsburg*, 773 F.2d at 802. Segal attempts to distinguish *Ginsburg* because, he contends, he used his racketeering proceeds to eliminate the PFTA deficit. Segal, however, eliminated the PFTA deficit with "personally guaranteed loan proceeds of approximately $30 million," (R. 353, Def.'s Objections at 5), so he either still retains his racketeering proceeds or he spent them on "wine, women, and song." Either way, his racketeering proceeds are subject to forfeiture.

Finally, Segal claims that requiring him to forfeit his racketeering proceeds would deter a future racketeer from doing "what society should want and encourage him to do." (R. 388, Def.'s Reply at 10.) Yet the trial evidence demonstrated that Segal eliminated the PFTA deficit as a last-ditch attempt to conceal and complete his fraud; it did not reveal any altruistic, contrite,

---

corporate veil. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) (stating that veil piercing is justified when there is a unity of interest and ownership and when disregarding the corporate form would be just and equitable).

or socially responsible motives. This Court will not carve out an exception to the general rule that the government does not have to prove that "the proceeds of racketeering activity are still in existence [at] the time of a defendant's conviction . . . ." *Ginsburg*, 773 F.2d at 803. Thus, the Government need not prove that Segal still possesses $30 million in racketeering proceeds.

## CONCLUSION

We modify the PFO by excluding the following seven companies from the enterprise: (1) North Son, Inc.; (2) International Film Guarantors; (3) Settlement Planning Associates; (4) Fine Arts Risk Management; (5) Near North National Exchange Company; (6) Prime Source Financial Corporation; and (7) Home Warranty of America, LLC. We otherwise affirm the PFO. (R. 353-1, Def.'s Objections.) In order to determine whether any third parties have a valid interest in the property subject to forfeiture, the Government is directed to publish notice of the forfeiture order as required by 18 U.S.C. § 1963(l)(1). We will enter a final forfeiture order as required by Federal Rule of Criminal Procedure 32.2(c)(2) upon completion of the ancillary third-party proceedings.

ENTERED: /s/ Ruben Castillo
**Judge Ruben Castillo**
**United States District Court**

**Dated: October 6, 2004**