# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 112 | **DATE** | 12/13/2004 |
| **CASE TITLE** | U.S.A. vs. Michael Segal, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    (Defendants Michael Segal and Near North Insurance Brokerage only).
Defendants' Motion for Judgment of Acquittal [380-1], a New Trial [380-2], and an Arrest of Judgment [380-3] is granted in part and denied in part.  Enter Memorandum Order and Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | DEC 15 2004 | 471 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| SRB | courtroom deputy's initials | Date/time received in central Clerk's Office | | mailing deputy initials | |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA      )
                                      )

    v.                           )       **No. 02 CR 112**
                                        )

MICHAEL SEGAL and NEAR NORTH      )       **Judge Ruben Castillo**
INSURANCE BROKERAGE.                 )
                                        )

*DOCKETED*
*DEC 1 5 2004*

## MEMORANDUM ORDER AND OPINION

Defendants Michael Segal and Near North Insurance Brokerage ("NNIB") filed a post-trial motion for a judgment of acquittal, a new trial, and an arrest of judgment. With one exception we deny Defendants' post-trial motion and hold that their convictions were free of any error. We do, however, grant Defendants' motion for a judgment of acquittal with respect to counts sixteen through twenty-two because the Government failed to present any evidence that the insurance license applications that they presented to the Illinois Department of Insurance were "financial reports or documents" as required by 18 U.S.C. § 1033(a)(1). Thus, Defendants' motion is partially granted and partially denied. (R. 380.)

## LEGAL STANDARDS

A court must enter a judgment of acquittal under Federal Rule of Criminal Procedure 29 if, after considering all the evidence in the light most favorable to the Government, it concludes that no rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004). A court can order a new trial under Federal Rule of Criminal Procedure 33 if, after considering the credibility of the witnesses, it concludes that the jury's verdict is "so contrary to the weight of the evidence that a new trial is required in the interest of justice." *See United States v. Washington*, 184 F.3d 653, 657 (7th Cir.

*471*

1999). Finally, a court must arrest a judgment under Federal Rule of Criminal Procedure 34 if the indictment does not charge an offense or the court lacks jurisdiction.

## ANALYSIS

### I.  Judgment of Acquittal

Defendants assert that they are entitled to a judgment of acquittal because the Government failed to prove: (1) the scheme to defraud charged in the indictment; (2) an agreement between Segal and Daniel Watkins to defraud the United States; (3) that Defendants were engaged in the "business of insurance;" and (4) that Defendants made a false statement "in connection with any financial reports or documents presented to" the Illinois Department of Insurance. We address each argument in turn.[1]

### A.  The Scheme to Defraud

Defendants assert that they are entitled to a judgment of acquittal on counts one through fifteen because the Government failed to prove the scheme to defraud charged in the Fourth Superseding Indictment. The Fourth Superseding Indictment charged Defendants with:

---

[1] We did not address Defendants' argument that the blank license renewal forms were not "sent for the purpose of executing" a scheme to defraud because we fully addressed this issue in an earlier opinion: *United States v. Segal*, 299 F. Supp. 2d 840, 848-50 (N.D. Ill. 2004). We also did not address their claims that we erred in denying various arguments raised in their numerous motions to dismiss. *See* R. 380, Defs.' Mot. at 15-16. With respect to these arguments, we adhere to our previous rulings. *See United States v. Segal*, 248 F. Supp. 2d 786, 790-93 (N.D. Ill. 2003); *Segal*, 299 F. Supp. 2d at 845-50. Additionally, we decline to hold the mail fraud, wire fraud, and RICO statutes unconstitutional.

Defendants also incorporated by reference Defendants' Motion for Judgment of Acquittal, (R. 320), and the Supplemental Memorandum of Law in Support of Defendant Near North Insurance Brokerage, Inc.'s Motion for Judgment of Acquittal, (R. 321). This motion, however, did not raise any arguments not contained in the present motion.

a scheme and artifice to defraud, and to obtain and cause to be obtained the use and benefit of money, funds, credits, and other things of value that [Defendants] misappropriated and misused from a Premium Fund Trust Account ("the Trust") required to be established and honestly and faithfully maintained and accounted for by defendant MICHAEL SEGAL and NNIB for the benefit of customers of NNIB, Insurance Carriers, and others; from money and credits due customers; and from inflated and fraudulently obtained premium payments, all by means of materially false and fraudulent pretenses, representations and promises, and material omissions, by creating the false appearance that premiums paid by customers to NNIB for insurance would be held in trust, properly accounted for and timely transmitted to the appropriate Carriers in payment for the insurance they provided (less any proper deductions such as commissions earned by NNIB); that credits due customers would be held in trust, properly accounted for, and appropriately and timely refunded to customers and otherwise properly treated and accounted for to customers of NNIB, and that proper charges would be billed to and collected from customers; and to deprive the Trust, various Carriers, customers of NNIB, and others, of defendant MICHAEL SEGAL's and defendant NNIB's duty to provide honest services in the operation of NNIB and the maintenance of NNIB's Premium Fund Trust Account ....[2]

(R. 227, Fourth Superseding Indictment, Count 1 ¶ 2.) Rather than prove this scheme to defraud, Defendants assert that the evidence, when viewed in the light most favorable to the Government, could only prove three smaller schemes to defraud: (1) a scheme to defraud NNIB's customers by misusing the PFTA; (2) a scheme to defraud NNIB's customers by writing off credits due to them;[3] and (3) a scheme to defraud NNIB's customers by fraudulently obtaining premium

_____

[2] Before it was submitted to the jury, the Fourth Superseding Indictment was redacted to exclude "the Trust" and "others" as victims.

[3] Defendants actually assert that the evidence could only prove two schemes to defraud because they claim that their second scheme—writing off customers' credits—is conversion, not fraud. (R. 380, Defs.' Mot. at 5.) The Seventh Circuit defines fraudulent conduct as conduct that departs from "fundamental honesty, moral uprightness and candid dealings in the general life of the community." *Henningsen*, 387 F.3d at 589 (quoting *United States v. Hammen*, 977 F.2d 379, 383 (7th Cir. 1992)). Deliberately writing off credits that are owed to customers qualifies as fraudulent conduct. Defendants' argument that writing off credits is not fraudulent as a matter of law is based on *Richards v. Combined Insurance Company of America*, 55 F.3d 247 (7th Cir.

(continued...)

3

payments. Furthermore, Defendants assert they were prejudiced by the variance between the single scheme charged in the indictment and the multiple schemes supported by the evidence.

To be entitled to a judgment of acquittal because of prejudicial variance between the indictment and the evidence, Defendants must prove that: (1) the evidence, when viewed in the light most favorable to the Government, was insufficient to prove the charged scheme to defraud; and (2) they were prejudiced by the variance between the scheme charged in the indictment and the schemes supported by the evidence. *United States v. Williams*, 272 F.3d 845, 862 (7th Cir. 2001); *see also United States v. Polichemi*, 219 F.3d 698, 706 (7th Cir. 2000). Defendants assert that the Government failed to prove the charged scheme to defraud because the evidence showed no connection between the PFTA deficit, the credit write-offs, and the fraudulent premiums. They suggest that the Government should have introduced evidence that Defendants "plotted the injuries at one time or as part of a single 'scheme,'" (R. 380, Defs.' Mot at 3), but this type of "smoking gun" evidence is not the only way to prove the charged scheme.

The evidence, viewed in the light most favorable to the Government, was simply overwhelming and more than sufficient to permit a reasonable jury to find the charged scheme to defraud beyond a reasonable doubt. The evidence demonstrated that the credit write-offs and fraudulent premiums brought substantial funds into NNIB, thereby permitting and helping to

---

[3](...continued)
1995). That case is distinguishable, however, because the Seventh Circuit held that the *Richards* defendants could not have intended to defraud their customers because the evidentiary record showed that they "said that they would return the premium and that they did return premiums." *Richards*, 55 F.3d at 253. The evidentiary record in this case is different; Segal and NNIB did *not* return the premiums. Therefore, this aspect of the scheme was properly submitted to the jury.

conceal the continued abuse of the PFTA.[4] Each type of fraudulent conduct furthered and concealed the others, so in this way, these three different types of fraudulent conduct were inter-related and together constituted the charged scheme to defraud. Defendants' three smaller schemes are merely the three principal means through which they carried out the larger charged scheme.[5] We therefore deny Defendants' motion for a judgment of acquittal on this basis.[6]

---

[4] In proving that Defendants fraudulently obtained premiums, the Government proved that Defendants used DMI Brokerage, LLC to fraudulently obtain a commission rather than a premium. Defendants concede that this variance was not prejudicial. (R. 460, Defs.' Reply at 4.)

[5] Defendants also claim that the Government failed to prove that their practices of discounting insurance in violation of state law and reimbursing campaign contributions in violation of federal law were parts of the scheme to defraud as alleged in the indictment, (see R. 460, Defs.' Reply at 8), but these illegal practices helped conceal the charged scheme from detection by currying favor with influential individuals.

[6] Defendants also assert that they are entitled to a new trial because of the prejudicial variance between the single scheme charged in the indictment and the multiple schemes supported by the evidence. (R. 380, Defs.' Mot. at 44.) They claim that they were prejudiced by this Court's refusal to require special verdicts on each of Defendants' smaller schemes to defraud. The indictment did not allege these three schemes, and the evidence—even when considering the credibility of the witnesses—was sufficient for a jury to find the charged scheme to defraud. Accordingly, Defendants were not entitled to the requested special verdicts. Defendants also claim that they were prejudiced because the indictment returned by the grand jury incorrectly referred to the PFTA as a victim. This Court redacted those references from the indictment before submitting the charge to the jury, yet Defendants seek a new trial because "it is not clear that the grand jury would have returned an indictment without reference to the PFTA as a victim." (Id.) We fail to comprehend how this small change to the indictment could have had such a significant effect on a grand jury, and even if we could, the requested relief—a new trial—would not be the appropriate remedy as Defendants claim that the indictment was defective. We therefore reject both of Defendants' "prejudicial variance" arguments in support of their motion for a new trial.

## B. An Agreement to Defraud the United States

Segal asserts that the Government failed to prove an agreement between himself and Watkins to defraud the United States. Segal claims that the only evidence of an agreement was a 1989 memo between himself and Watkins regarding posting withdrawals from petty cash to a postage account. A judgment of acquittal is only warranted when there is "no evidence, regardless of how it is weighed, from which the jury could have found guilt beyond a reasonable doubt." *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir. 1996) (quoting *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir. 1992)). Segal's acknowledgment that there was some evidence of an agreement to defraud the United States precludes granting him a judgment of acquittal.

The Government, however, also introduced a considerable amount of circumstantial evidence to establish that Segal and Watkins agreed to defraud the United States: testimony from numerous witnesses that Watkins was solely responsible for Segal's accounting; that Watkins regularly delivered cash to Segal; and that Watkins paid for Segal's personal expenses with corporate money. This evidence was more than sufficient for a rational jury to conclude that Watkins and Segal "embraced the criminal objective" of defrauding the United States through the filing of false tax returns. *See United States v. Messino*, 382 F.3d 704, 709 (7th Cir. 2004). The Government does not need to introduce evidence proving an "explicit agreement;" they only need to prove the existence of a "tacit agreement." *Id.* We, therefore, deny Segal's motion for a judgment of acquittal on this basis.

6

## C. The Business of Insurance

Defendants assert that the Government failed to prove that they were engaged in the

"business of insurance" as defined in 18 U.S.C. § 1033(f)(1). That section defines "business of

insurance" as:

> (A) the writing of insurance, or
> (B) the reinsuring of risks,
>
> by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons . . . .[7]

18 U.S.C. § 1033(f)(1). Defendants assert that they were not in the business of insurance

because, as insurance brokers, they never wrote insurance nor reinsured risks. The evidence at

trial, viewed in the light most favorable to the Government, was sufficient for a reasonable jury

to find that Defendants, as brokers, were agents of the insurance carriers.[8] Defendants were

therefore engaged in the business of insurance as defined in the statute, so we deny their motion

for a judgment of acquittal on this basis.

## D. Financial Reports or Documents

Counts sixteen through twenty-two of the Fourth Superseding Indictment allege that

Defendants violated 18 U.S.C. § 1033(a)(1) by making false statements in insurance producer

---

[7] The statute further defines the term "insurer" as "any entity the business activity of which is the writing of insurance or the reinsuring of risks, and includes any person who acts as, or is, an officer, director, agent, or employee of that business . . . ." 18 U.S.C. § 1033(f)(2).

[8] Brokers have the authority to act on behalf of insurance carriers. Indeed, Defendants acknowledge that under Illinois law "once insurance is bound through a broker like Near North, the insured customer is covered whether the broker forwards the premium to the carrier or not." (R. 380, Defs.' Mot. at 25.)

license renewal applications that they submitted to the Illinois Department of Insurance. Section 1033(a)(1) provides that:

> [w]hoever is engaged in the business of insurance whose activities affect interstate commerce and knowingly, with the intent to deceive, makes any false material statement or report or willfully and materially overvalues any land, property or security--
>
>> (A) in connection with any financial reports or documents presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of such person, and
>>
>> (B) for the purpose of influencing the actions of such official or agency or such an appointed agent or examiner,
>
> shall be punished as provided in paragraph (2).

In a pre-trial motion to dismiss, Defendants requested that we dismiss these counts because the license renewal applications were not financial reports or documents. We denied their motion to dismiss in order to afford "the Government the opportunity to prove that Defendants made a false statement in connection with a financial report or document that was presented to an insurance regulator." *Segal*, 299 F. Supp. 2d at 848.

The Government failed to present any evidence that the license renewal applications were financial reports or documents. The Government asserts that § 1033(a)(1) only requires that Defendants made a false statement "in connection with" the PFTA's financial records.[9] This

---

[9] During the trial the Government asserted that the license applications should be considered financial documents. (R. 380, Defs.' Mot. at 9, citing Trial Transcript at 5117.) The Government has not made this argument in its post-trial brief, nor has the Government presented any evidence that would lead this Court or a rational jury to conclude that these license applications should be treated as financial documents. Furthermore, at the time the statute was enacted, one congressman, Representative Earl Pomeroy of North Dakota, noted that the

(continued...)

interpretation ignores § 1033(a)(1)(A)'s "presented to" clause which limits the statute to false statements made "in connection with any financial reports or documents presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of such person . . . ." This Court must give meaning to "every clause and word in a statute," so we reject the Government's interpretation because it deprives the "presented to" clause of any meaning.[10] *See Matter of Lufshultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995) (quoting *Moskal v. United States*, 498 U.S. 103, 109-10 (1990)).

Given the complete absence of evidence establishing that the license renewal applications were financial reports or documents, we conclude that no rational jury could have found that Defendants made a false statement "in connection with any financial reports or documents presented" to the Illinois Department of Insurance. Furthermore, no testimony established that the license renewal applications had any potential influence on any state official. Accordingly, the jury's guilty verdict with respect to counts sixteen through twenty-two is not supported by the evidence. We therefore grant Defendants' motion for a judgment of acquittal with respect to these counts.

---

[9](...continued)
inclusion of the word "financial" decriminalizes false statements in license applications because they are not "explicitly 'financial' in nature, but are nevertheless extremely important to effective insurance regulation." 140 Cong. Rec. E748-01 (daily ed. Apr. 21, 1994) (statement of Rep. Pomeroy).

[10] We also find that the term "financial" modifies both reports and documents. *See Home Life Ins. Co. v. Dunn*, 86 U.S. 214, 224 (1873).

9

## II.     New Trial

Defendants assert that they are entitled to a new trial because this Court made a multitude of errors before and during the trial.[11] They assert that: (1) this Court made numerous evidentiary errors; (2) this Court improperly denied Defendants' motions for a mistrial; (3) this Court erred in instructing the jury; (4) this Court erred in permitting the Government to monitor defense inspection of documents; and (5) this Court erred during the forfeiture proceeding by preventing Segal from offering cost-of-capital evidence and by modifying a jury instruction after Segal's closing argument. They also claim that the totality of circumstances surrounding this prosecution requires a new trial. We address and reject each of these arguments in turn.

### A.     Evidentiary Rulings

A defendant is entitled to a new trial because of an erroneous evidentiary ruling if the error had a "substantial and injurious effect or influence on the jury's verdict." *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004) (quoting *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002)). If the properly admitted evidence of the defendant's guilt is overwhelming, an evidentiary error is deemed harmless and cannot constitute the basis for a new trial. *Id.* Defendants assert that they are entitled to a new trial because this Court admitted inadmissible evidence and excluded admissible evidence.

---

[11] We decline to address the following arguments because we have adequately addressed them elsewhere: (1) this Court admitted inadmissible "other acts" evidence, (R. 239, March 23, 2004 Minute Order); (2) this Court erred in denying Defendants' motions for an evidentiary hearing, *United States v. Segal*, 299 F. Supp. 2d 856 (N.D. Ill. 2004); (3) this Court erred in not excluding the fruits of the Government's review of Defendants' attorney-client privileged communications, *United States v. Segal*, 313 F. Supp. 2d 774 (N.D. Ill. 2004); (4) this Court erred in denying Defendants' renewed motions for a bill of particulars, *Segal*, 299 F. Supp. 2d at 851; and (5) there is insufficient evidence to support the jury's finding that $30 million is subject to forfeiture, *United States v. Segal*, 339 F. Supp. 2d 1039, 1048-49 (N.D. Ill. 2004).

## 1.     The Admission of Inadmissable Evidence

Defendants assert that this Court admitting a substantial amount of inadmissible evidence: (1) hearsay testimony from NNIB's employees and outside consultants; (2) inadmissible legal opinions; (3) hearsay testimony and speculation from Nathaniel Shapo; and (4) irrelevant evidence or evidence that should have been excluded under Federal Rule of Evidence 403.[12] We address each category in turn.

### a.     The Testimony of the Co-Conspirators

Defendants assert that this Court erred in admitted hearsay evidence from NNIB's employees and from NNIB's outside consultants. The Government asserts that these statements are admissible under Federal Rules of Evidence 801(d)(2)(E). This rule provides that a statement offered against a party is not hearsay when it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). A statement is admissible under Rule 801(d)(2)(E) if the Government demonstrates "by a preponderance of the evidence that: (1) a conspiracy existed; (2) defendant and declarant were involved in the conspiracy; and (3) the statements were made during and in furtherance of the conspiracy." *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999).

This Court conditionally admitted these statements after reviewing the Government's *Santiago* proffer and admitted them into evidence during trial after concluding that the

---

[12] Defendants also assert that we should have barred the Government from arguing that Defendants' abuse of the PFTA placed a risk of loss on consumers. They assert that under Illinois law the customer is afforded coverage from the carrier even if the broker does not pay the customer's premiums. We remain unconvinced that this state law provision eliminated the possibility that one of NNIB's customers would suffer a loss as a result of Defendants' abuse of the PFTA. This evidence was relevant and properly admitted.

Government had met its burden of proof. While Defendants assert that the Government failed to satisfy this burden, we adhere to our trial ruling because the Government presented evidence—which amply satisfied the preponderance standard—demonstrating that Defendants and the declarants conspired to defraud their customers—either by abusing and covering up the abuse of the PFTA deficit, writing off credits, or obtaining improper premiums—and that the admitted statements were made during and in furtherance of the conspiracy. This evidence was properly admitted.

### b.    Legal Opinions

A non-expert witness, under Federal Rule of Evidence 701, can give his personal opinion if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [*i.e.* expert testimony]." Defendants assert that this Court erroneously admitted the following three opinions: (1) Norm Pater's opinions about Illinois's PFTA regulations and Ponzi schemes; (2) Marie Heinrich's opinion about whether Illinois law permitted NNIB to give insurance discounts or rebates to customers;[13] and (3) Pat Morgan's opinion that Segal's lack of records impeded her ability to

---

[13] Defendants also assert that there was no basis for the Government to assert that they violated 215 Ill. Comp. Stat. 5/151(1) because the Government offered no evidence that a "customer was induced to purchase insurance as a consequence of receiving a discount." (R. 380, Defs.' Mot. at 6.) The statute does not require that a discount induce a customer to purchase insurance, rather it prohibits giving:

> any rebate of or part of the premium payable on the policy, or on any policy or agent's commission thereon or earnings, profits, dividends or other benefits founded, arising, accruing or to accrue thereon or therefrom, or any special advantage in date of policy or age of issue, or any paid employment or contract for services of any kind or any valuable consideration or inducement to or for insurance on any risk . . . .

(continued...)

perform necessary tax calculations. Each of these opinions meets the three Rule 701 criteria, so they were properly admitted. Even if these opinions were not admissible under Rule 701, this error would be harmless given the overwhelming evidence of Defendants' guilt. *See Redditt*, 381 F.3d at 601.

### c. The Testimony of Nathaniel Shapo

Defendants assert that this Court erred in admitting hearsay evidence and speculation through the witness Nathaniel Shapo. Shapo testified about two phone conversations he had with former Governor George Ryan and speculated as to the reasons Governor Ryan placed those calls. These statements were admissible not for the truth of the matters asserted in those conversations, but to properly explain Shapo's actions. Even if this Court erred in admitting Governor Ryan's statements for the truth of the matter—that he was attempting to convince Shapo to give NNIB favorable treatment—any prejudicial effect that these statements could have had was minimal because the fact that former Governor Ryan twice called Shapo was admissible as was Shapo's conversation with Defendants' agent Zach Stamp. Shapo could also provide his personal opinion under Rule 701 as to why Governor Ryan called him. *See* discussion of Rule 701, page 11 *supra*. Thus, this Court properly admitted Shapo's testimony, and any possible error in this regard would be harmless given the overwhelming evidence of Defendants' guilt. *See Redditt*, 381 F.3d at 601.

-----------------

[13](...continued)

215 Ill. Comp. Stat. 5/151(1). This statute prohibits both giving "any rebate of or part of the premium payable on the policy" and giving "any other valuable consideration or inducement to or for insurance on any risk." Moreover, it is disingenuous for Defendants to claim that a rebate is not an inducement to purchase insurance.

13

#### d.    Irrelevant and Unfairly Prejudicial Evidence

Defendants assert that this Court admitted irrelevant evidence or evidence which should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Defendants assert that evidence that they reimbursed employees' political contributions, gave loans or paid consulting fees to politicians and former politicians, and gave its customers discounted insurance was irrelevant. We disagree. This evidence was relevant because these practices helped to conceal the scheme by currying favor with influential individuals. This evidence was also admissible under Rule 403 because its probative value was not substantially outweighed by the danger of unfair prejudice. This Court properly admitted this evidence, and any possible error in this regard would be harmless given the overwhelming evidence of Defendants' guilt. *See Redditt*, 381 F.3d at 601.

Defendants also assert that this Court improperly admitted several large photographs of cash and other items observed by FBI agents in Segal's downtown condominium. These photographs were relevant because they made it more probable that Segal received substantial amounts of cash from Daniel Watkins and others. Segal's offer to stipulate to the amount of money the FBI found at his residence does not affect the relevance of the photographs. While a stipulation might have mitigated the danger of unfair prejudice, this danger did not substantially outweigh the photographs' probative value. This Court properly admitted this evidence, and any possible error in this regard would be harmless given the overwhelming evidence of Defendants' guilt. *See Redditt*, 381 F.3d at 601.

14

## 2.      The Exclusion of Admissible Evidence

Defendants assert that this Court improperly excluded the following admissible evidence: (1) evidence of the collateral impact and financial devastation suffered by NNIB as a result of the criminal prosecution; and (2) the unredacted version of Government Exhibit 38. Defendants assert that evidence of the financial devastation suffered by NNIB was relevant to show the bias of certain cooperating witnesses, who according to the defense, vindictively engineered Defendants' prosecution. Whatever minute tendency this evidence may have had to make Defendants' theory more probable was substantially outweighed by the evidence's ability to inappropriately elicit the jury's sympathy. Accordingly, this evidence was properly excluded under Rule 403.

Defendants next assert that the unredacted version of Government Exhibit 38 should have been admitted. This exhibit is a memo drafted by Deloitte & Touche auditor Heidi Morlock about Defendant's use of fiduciary funds for operating purposes. This Court redacted the memo to exclude hearsay statements made by an insurance expert and NNIB's outside counsel. Defendants assert that the redacted statements are admissible as hearsay under Federal Rule of Evidence 803(6) because "it is the regular activity for outside auditors to gather information from third parties." (R. 380, Defs.' Mot. at 34.) Defendants, however, did not establish that the third parties' statements were records of regularly conducted activity, so they cannot rely on Rule 803(6) to introduce hearsay inside of a hearsay document. We properly redacted Government Exhibit 38 to exclude the inadmissible hearsay.

After considering all of Defendants' challenges to our evidentiary rulings we conclude that even if, as noted above, some of our rulings were erroneous that these errors were harmless.

15

Given the overwhelming, properly-admitted evidence of Defendants' guilt, these handful of arguable errors could not have had a "substantial and injurious effect or influence on the jury's verdict." *Redditt*, 381 F.3d at 601. Our evidentiary rulings, therefore, are not a valid basis for a new trial.

## B. Mistrial Motions

A defendant is entitled to a new trial if this Court erroneously denied a motion for a mistrial. A mistrial would be warranted if a prosecutor made a statement that, when viewed in isolation, was improper and, when viewed in the context of the entire trial, deprived the defendant of his right to a fair trial. *United States v. Mabrook*, 301 F.3d 503, 509 (7th Cir. 2002). Defendants moved for a mistrial on two occasions: after the Government asked a witness if she was aware that Dan Rostenkowski was convicted for stealing money from a postage fund, (*see* Trial Transcript at 1964-65), and after the Government stated in closing argument that Segal hired Harvey Silets, "one of the best criminal defense lawyers in the city," after he discovered that his scheme to defraud might be exposed, (*see* Trial Transcript at 5784-85). This Court denied both motions and gave the jury appropriate limiting instructions.

Both of these statements—when viewed in isolation—were improper, so the question is whether either of them deprived Defendants of their right to a fair trial. To determine this, we consider: "(1) the nature and seriousness of the statements, (2) whether the defendant's conduct invited the statements, (3) whether the district court adequately instructed the jury, (4) whether the defendant had the opportunity to counter the statements, and (5) the weight of the evidence against the defendant." *Mabrook*, 301 F.3d at 509. The Rostenkowski statement did not deprive Defendants of their right to a fair trial. This one question asked in the middle of a two month

16

trial could not have had a serious effect on the jury's verdict. The Court adequately instructed the jury to disregard it and even issued a curative instruction. Furthermore, the evidence of Defendants' guilt was overwhelming. The Silets statement also did not deprive Defendants of their right to a fair trial. It is improper for a prosecutor to imply that a defendant is guilty because he hired a criminal defense lawyer, but one such mis-step during a lengthy closing argument does not require a new trial. The jury was instructed that the attorneys' statements during closing arguments are not evidence, Defendants' timely objection to the statement was sustained, and the evidence of Defendants' guilt was overwhelming. For these reasons, we properly denied Defendants' motions for a mistrial.

### C.    Jury Instructions

A defendant is entitled to a new trial if he was prejudiced by jury instructions that did not adequately state the law. *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004). A defendant is prejudiced if, after considering all the instructions, evidence, and arguments, "the jury was misinformed about the applicable law." *Id.* (quoting *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001)). Defendants assert that they are entitled to a new trial because this Court refused to instruct the jury that it could consider an absence of loss as proof that they had no intent to defraud and refused to instruct the jury that the intent to violate state law does not equal the intent to commit mail fraud.[14]

---

[14] Defendants also assert that this Court erred by refusing to give Defendants' proposed instruction that a multiplicity of mailings may not establish a "pattern" of racketeering activity and by giving the *Hausmann* instruction. *See United States v. Hausmann*, 345 F.3d 952 (7th Cir. 2003). Defendants have not explained why they were prejudiced by this Court's refusal to give Defendants' proposed instruction that a multiplicity of mailings may not establish a "pattern" of racketeering activity, and they concede that the *Hausmann* instruction is established Seventh
(continued...)

This Court's refusal to instruct the jury that it could consider an absence of loss as proof that Defendants had no intent to defraud did not misinform the jury about the applicable law. Defendants claim that, in light of the numerous legally-correct instructions stating that no proof of loss is required, the jury should have also been instructed that evidence of no loss may prove that they lacked an intent to defraud. The absence of this instruction did not misinform the jury about the applicable law. Defendants elicited testimony from numerous witnesses that NNIB paid all premiums owed to insurance carriers, and the jury was explicitly instructed that it should consider all the evidence in the case. (R. 331, Jury Instructions at 7.) Moreover, Defendants highlighted this evidence in their closing arguments. The Court was under no obligation to do so again in the jury instructions. Thus, this Court's refusal to instruct the jury in this manner, considering the trial as a whole, did not misinform the jury.

This Court's refusal to instruct the jury that the intent to violate state law does not equal the intent to commit mail fraud also did not misinform the jury about the applicable law. This Court instructed the jury that Defendants were charged with violations of federal law, not state law, and that the jury should not find Defendants guilty unless the Government proved all the elements of the charged federal crimes beyond a reasonable doubt. (*Id.* at 61.) This instruction adequately stated the law, so this Court's refusal to use Defendants' language did not misinform the jury. Thus, we deny Defendants' motion for a new trial on this basis.

---

[14](...continued)
Circuit law. For these reasons alone, we deny these arguments.

### D. Monitoring of Defense Inspection of Documents

Defendants claim that this Court erred by permitting the Government to monitor their inspection of documents in the Government's possession. The Government stored documents it seized from NNIB in an off-site storage facility and monitored Defendants' inspection of these documents. More than two years after the documents were seized and in the midst of the trial, Defendants requested that this Court bar this practice asserting that it violates the work-product doctrine and their Sixth Amendment right to counsel. (R. 291, Defs.' Mot.) We denied their motion finding nothing "inappropriate" about the practice. (Trial Transcript at 2529.) Defendants cited no analogous cases and have provided no new arguments. We therefore adhere to our trial ruling and find that Defendants are not entitled to a new trial on this basis.

### E. Forfeiture Proceedings

Segal also contends that he is entitled to a new forfeiture trial because this Court made two errors during this proceeding by: (1) ruling that cost-of-capital evidence was not relevant; and (2) modifying a jury instruction after Segal had made his closing argument. First, Segal sought to introduce evidence of the interest NNIB would have paid had it borrowed money in lieu of misappropriating money from the PFTA. This Court ruled that the evidence was not relevant because the amount of interest NNIB would have owed under this hypothetical scenario is not relevant to the calculation of his actual racketeering proceeds. Segal asserts that the cost-of-capital evidence was a "reasonable alternative" because he ultimately eliminated the PFTA deficit. (R. 380, Defs.' Mot. at 37.) He also claims that the Government conceded the relevancy of this evidence by arguing that the "rate-of-return" on the misappropriated PFTA money is forfeitable. (*Id.* at 38.) Yet these arguments do not address how evidence of events that never

19

happened—the use of loans to expand NNIB—is relevant to Segal's racketeering proceeds. This Court properly excluded this evidence.

Next, Segal asserts that a new forfeiture trial is required because this Court modified a jury instruction after Segal's closing argument. At the time that Segal made his closing argument, the instruction was:

> Only those proceeds received by the defendant can be subject to forfeiture. Income, revenue, proceeds received by the enterprise, but not by the defendant, are not subject to forfeiture pursuant to subsections (a)(1) and (a)(3).

(R. 380, Defs.' Mot. at 39, citing Trial Transcript at 6069.) After Segal's closing argument, this Court inserted the clause "directly or indirectly" into the first sentence of the instruction so that it read: Only those proceeds received by the defendant directly or indirectly can be subject to forfeiture. (R. 339, Forfeiture Jury Instructions at 10.) Segal claims that he was prejudiced by this alteration because he based his argument on the original instruction. The modified instruction, however, conforms with the statutory language of 18 U.S.C. § 1963(a)(3). To the extent Segal made an argument that was not based on the law, he did so at his peril. And if he wanted to clarify his closing argument in light of this modification, he should have requested leave to re-open his closing argument. Segal was not prejudiced by the modification, and the jury was not misinformed about the applicable law. Thus, there is no need for a new forfeiture trial.

### F.     Totality of the Circumstances

Defendants' final argument is that the totality of the circumstances warrant a new trial. As we have found little merit among the dozens of arguments that Defendants have raised in their motion for a new trial, we easily conclude that Defendants were afforded a fair trial that

respected all of their constitutional rights. Therefore, the totality of the circumstances do not require a new trial.

## III.    Arrest of Judgment

This Court "must arrest judgment if: (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34. Defendants assert that the same reasons which justify granting them a new trial and a judgment of acquittal warrant arresting the judgment against them. This argument, which categorically ignores the appropriate legal standard for arresting a judgment, is denied just as cursorily as it was made.

## CONCLUSION

Defendants' motion for a judgment of acquittal is only granted with respect to counts sixteen through twenty-two of the Fourth Superseding Indictment. The jury's verdict with respect to these counts was not supported by the evidence because the Government failed to present any evidence that the insurance producer renewal licenses presented to the Illinois Department of Insurance were "financial reports or documents" as required by 18 U.S.C. 1033(a)(1). Defendants' motion for a judgment of acquittal, a new trial, and an arrest of judgment is otherwise denied. (R. 380.) The bottom line is that both Defendants were properly convicted of most of the charges against them after a fair trial by a competent, properly instructed jury that was presented with overwhelming evidence of Defendants' guilt. This Court plans to proceed with sentencing of both Defendants on February 23, 2005 at 1:00 pm.

ENTERED: _____
         Judge Ruben Castillo
         United States District Court

Dated: December 13, 2004

21