UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 02 CR 112 |
| ) | |
| MICHAEL SEGAL.   ) | Judge Ruben Castillo |
| ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Government and defense counsel's stipulations regarding defendant Michael Segal's competency to be sentenced. Neither side has actively requested a competency hearing, however, the Court is well aware of its discretion to hold a competency hearing. After thoroughly reviewing the parties' stipulations, this Court finds that a competency hearing is unnecessary and defendant is competent to be sentenced.

## ANALYSIS

Following a jury trial, defendant was convicted of mail fraud, wire fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and multiple counts of making false statements to obtain renewal of license applications to the Illinois Department of Insurance in violation of 18 U.S.C. Section 1033(a)(1) and 18 U.S.C. 2.[1] Almost a year after his conviction, defendant's attorneys raised the argument that he is mentally incompetent to participate in his defense for purposes of sentencing. Pursuant to 18 U.S.C. § 4241(b) (2005), the Court ordered a psychiatric evaluation of the defendant. Three psychiatrists examined the defendant, including two government psychiatrists and one defense psychiatrist.

---

[1] The latter counts were vacated by this court when it granted defendant's post-trial motion for judgment of acquittal. *United States v. Segal et al.*, 02 CR 112, 2004 WL 2931331, *1 (N.D. Ill. Dec. 13, 2004).

The government and defense psychiatrists differ in opinion as to defendant's current demeanor and competency to be sentenced. The government psychiatrists, Dr. Goldstein and Dr. Dinwiddie, reported that his demeanor ranged from "alert and fully oriented" to "generally cooperative and . . . interested in participating." Both doctors noted that defendant suffers from Attention Deficit Hyperactive Disorder ("ADHD") and has features of narcassistic and obsessive compulsive personality disorders. Nonetheless, they believe that defendant is of average intelligence although impaired by poor reading skills, is fairly knowledgeable about the charges against him, and has sufficient self control to be able to behave with decorum.

In contrast, the defense psychiatrist, Dr. Rubin, reported that at the time of interviewing defendant's "mood was angry, and when directed outward it was towards his lawyers, the prosecution, the judge, or me [the psychiatrist] . . . ." He further noted that the defendant suffers from "a delusional disorder characterized by a psychotic organization of his thinking into paranoid and grandiose delusions which interfere with abstract thinking . . . ." In light of this evidence, this Court must consider both whether a hearing is necessary to determine the defendant's competency for sentencing, and if not, whether the defendant is competent.[2]

## I. Competency Hearing

When there is evidence demonstrating that reasonable cause exists to believe that a defendant is mentally incompetent to proceed before the court, a district court may order a

---

[2]Courts often conflate the inquiries for whether a defendant requires a competency hearing and whether the defendant is competent to be sentenced because the inquiries are so similar. This Court has taken pains, however, to keep the analyses separate.

hearing pursuant to 18 U.S.C. § 4241(a).³ *United States v. Teague*, 956 F.2d 1427, 1435 (7th Cir. 1992); *United States v. Caicedo*, 937 F.2d 1227, 1231 (7th Cir. 1991). "Unquestionably, due process requires a defendant to be competent to stand trial [and] the need for competency extends beyond trial to the sentencing phase of a proceeding." *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991) (citing *United States v. Garrett*, 903 F.2d 1105, 1115 (7th Cir. 1990)); *Godinez v. Moran*, 509 U.S. 389, 407 (1993) (stating that the same standard for competency applies regardless of what point in the legal proceedings the issue of competency arises). Consequently, the Seventh Circuit has interpreted Section 4241(a) to mean that a competency hearing is *mandatory* if "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Teague*, 956 F.2d at 1435 n.9. Reasonable cause "escapes precise definition," but exists if there is "some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of competency." *United States v. Burns*, 811 F. Supp. 408, 415 (E.D. Wis. 1993). The presumption is that the defendant is competent. *Id.* at 416.

Applying these principles, this Court finds itself in the position of determining how much

---

³The statute reads in part:
> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 USCS § 4241(a) (2005).

weight to give the psychiatric evaluations that the parties have submitted. As the Seventh Circuit has noted:

> There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Collins*, 949 F.2d at 924 (*citing Drope v. Missouri*, 420 U.S. 162 (1975)). For several reasons, we find that the government's psychiatrists' findings are entitled to greater weight than the defendant's. Government psychiatrists spent more time evaluating the defendant than did the defense psychiatrist. Dr. Goldstein and Dr. Dinwiddie evaluated the defendant over a two day period and a four hour period, respectively. Dr. Rubin spent less than six hours evaluating the defendant. Second, Dr. Goldstein engaged in an extensive psychiatric examination of the defendant for the purpose of assessing the presence, nature, and extent of any cognitive defects that may warrant a competency hearing. In contrast, Dr. Rubin spent less than six hours evaluating the defendant without engaging in similar extensive testing as the government. Third, Dr. Sarrazin, a staff psychiatrist at the Bureau of Prisons, did the most recent evaluation of the defendant and found him to be competent to be sentenced. *See id.* at 926 (stating that "[t]he judge is also entitled to draw inferences from the psychiatric evaluations...the most recent and thorough of which determined [defendant] to be competent") (citations omitted). Since the most recent (Sarrazin) and the most thorough (Goldstein) of the psychiatric evaluations found defendant to be competent, we find that there is no reasonable cause to believe that the defendant is currently suffering from a mental disease or defect which warrants further proceedings regarding his competency.

This remains true despite the defendant's history of mental illness. A history of mental illness is insufficient to establish reasonable cause for a competency hearing. *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996). In this case, defendant's history of mental illness is not severe. Consequently, the fact that defendant has a history of ADHD and is potentially suffering from obsessive-compulsive disorder, bipolar affective disorder, and recurrent major depressive disorder does not automatically entitle him to a competency hearing especially since his most recent evaluations attest to his competency.

Given our evaluation of the weight due to the various psychiatrists' reports, we find that the Court has sufficient evidence to make a determination regarding the defendant's competence without further proceedings. The stipulations filed by the government and defense counsel regarding defendant's competence provide a complete picture of the defendant's mental state and demeanor. Here, both parties were given a chance to provide what evidence they deemed appropriate to determine the defendant's competence. *See United States v. O'Neal*, 969 F.2d 512, 514 (7th Cir. 1992) (holding that the district court did, in effect, hold a hearing when it gave the defense a chance to supplement a psychiatric report with further evidence). This Court holds that a competency hearing is not necessary to determine the defendant's competency to be sentenced.

## II. Competency to be Sentenced

Because we have held that a competency hearing is not required, the final issue to be resolved is whether the defendant is competent to be sentenced. Under Section 4241(d), if a court finds by a preponderance of the evidence that the defendant suffers from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings

against him or to assist properly in his defense, the defendant must be committed to the custody of the Attorney General for treatment in a suitable facility. The burden of proving mental incompetence is on the defendant. *Chichakly v. United States*, 926 F.2d 624, 633 (7th Cir. 1991).

We will first consider whether the defendant has sufficient ability to consult with his lawyers with a reasonable degree of rational understanding. *Teague*, 956 F.2d at 1432. Factors that the Court may consider include: "testimony from psychiatrists, the defendant's behavior–both before the court and elsewhere– intelligence, lapses of memory, unresponsiveness . . . [and] defense counsel's observations." *Salley*, 246 F. Supp. at 976.

In this case, defense counsel submitted an affidavit stating that they have reasonable cause to believe that the defendant is unable to assist properly in his sentencing. They have reportedly stated that the defendant is "always difficult to communicate with," has "ideas regarding his sentencing [that] were quite impractical," and is "unable to complete his thoughts." Dr. Rubin reported that the defendant's "mental disorder and concomitant disability has become increasingly disabling to his thinking and judgment regarding cooperating with his counsel and understanding his role in his sentencing hearing." He further stated that Segal has "a complete fixation on his organized paranoid delusion that six persons in his company (middle-level executives) working with others from another company (AON), as well as a 'hacker' working for the FBI, had 'set' him 'up. . . a master set up' in order to send him to prison, as well as take his company from him."

In contrast, the government psychiatrists who examined the defendant both found that there was no evidence that the defendant would not be able to assist with his defense. They state that two factors affect his ability to communicate with his attorneys: defendant's difficulties with

written communication and his insistence on following a legal strategy that his attorneys feel is likely to be unsuccessful. They do not consider these factors to be a bar to sentencing.

The defendant's attorneys may be in the best position to assess their client's competence. *Chichakly*, 926 F.2d at 634-35. However, the observations of the defense attorneys are not dispositive. *See United States v. O'Kennard*, 02 CR 481, 2004 WL 1179391, *8 (N.D. Ill. May 27, 2004) (making a provisional finding that the defendant is competent even though his attorney argued that he could not assist in his defense); *see also Odle v. Woodford*, 238 F.3d 1084, 1088-89 (9th Cir. 2001) (noting that while defense counsel has "the best informed view of the defendant's ability to participate in his defense," counsel is not "a trained mental health professional"). This Court cannot ignore the fact that Dr. Goldstein, Dr. Dinwiddie, and Dr. Sarrazin have found the defendant competent to be sentenced. Although Dr. Rubin found the defendant incompetent, given the recent evaluations finding the defendant competent it is possible that communication between counsel and the defendant will be improved. *Id.*; *Collins*, 949 F.2d at 926 (giving significant weight to the most recent psychiatric examinations).

The issue here is whether the defendant "has *sufficient present* ability to consult with his lawyer with reasonable degree of rational understanding." *Eddmonds*, 93 F.3d at 1314. According to the government psychiatrists, at the time of their evaluations the defendant "expressed no delusional beliefs, paranoid ideation or other misperceptions about the outcome of . . . the legal process." Furthermore, the defendant denied "being misinformed about or otherwise lacking an understanding of any part of the trial or legal proceedings in which he had just taken part, and described in detail his thoughts on the verdict." His tests reflect that he is of average intelligence, is responsive to the doctors and his attorneys, has not engaged in any bizarre

or questionable conduct, and does not suffer from any memory lapses. Consequently, we find that the defendant has sufficient present ability to consult with his attorneys.

Even if his attorneys consider some of his ideas impractical or illogical, the disagreement between defendant and his counsel regarding legal strategy does not mean that the defendant lacks sufficient present ability to consult with his attorneys. *Caicedo*, 937 F.2d at 1232. Furthermore, his preoccupation with the alleged conspiracy to take over his company and his anger/obsession with the legal proceedings against him is not necessarily an indication of incompetence. Dr. Goldstein-- the doctor who performed extensive diagnostic tests on the defendant-- noted that in most respects, the defendant appears to be functioning rationally. Even if he is suffering from delusions as advanced by the defense psychiatrist, they certainly do not rise to a level sufficient to find him incompetent. *Compare United States v. Blohm*, 579 F. Supp. 495 (S.D.N.Y. 1983) (defendant found incompetent after accusing a federal judge, former President Nixon, and professional golfer Arnold Palmer of causing the defendant to lose a civil suit that he had litigated in the court of the federal judge and constantly trying to introduce evidence of such conspiracy in his criminal trial).

To resolve the competency issue, we also must determine if the defendant suffers from a mental defect that prevents him from understanding the nature and consequences of the sentencing proceedings. 18 U.S.C. § 4241(d). Defendant was questioned extensively about these proceedings, including the potential sentence he faces; the consequences of any decisions that he makes in the course of the proceedings; the various rights that he, as a defendant, may assert and relinquish; and his comfort and openness with his attorneys. His answers were very knowledgeable, clear, and thoughtful. It is also likely that his training as an attorney aided him

8

in his ability to understand the nature of the proceedings. His understanding of the nature and possible consequences of the proceedings also, by definition, shows a capacity to aid in his defense. *O'Kennard*, 2004 WL 1179391 at *8. Based on the defendant's interviews with the government psychiatrists and his legal background, we find that the defendant understands the nature and consequences of the sentencing proceedings.

## CONCLUSION

This Court finds that defendant is competent to be sentenced. Sentencing will proceed on November 30, 2005 at 10:30a.m. The Court is concerned that the unusual delay in sentencing the defendant, which has been caused by various actions taken by counsel and the Bureau of Prisons, may have unintentionally caused the defendant undue stress. The Court expressly concludes that proceeding with the defendant's sentencing and subsequent appeal will benefit his mental health status. Nevertheless, this order will be reevaluated if defendant's mental status should deteriorate at any time before sentencing.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated:** October 12, 2005